2021 IL App (1st) 201136

Nos. 1-20-1136, 1-21-0003 (cons.)

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

|  |  |  |
|---|---|---|
| *In re* MARRIAGE OF | ) | |
| | ) | |
| | ) | Appeal from the Circuit Court |
| ERIC YABUSH, | ) | of Cook County. |
| | ) | |
|     Petitioner-Appellant, | ) | No. 07 D 9184 |
| | ) | |
| and | ) | The Honorable |
| | ) | Diana Rosario, |
| MELINDA YABUSH, | ) | Judge Presiding. |
| | ) | |
|     Respondent-Appellee. | ) | |
| | ) | |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices McBride and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1    The instant appeal arises from proceedings related to the dissolution of the marriage of petitioner Eric Yabush and respondent Melinda Yabush. As part of the dissolution proceedings, the parties entered into an agreed judgment for dissolution of marriage, which contained a provision that required petitioner, a salesperson, to pay $2226 per month for child support at that point in time, which represented 28% of his base pay at the time, plus 28% of any bonuses or commissions petitioner received. Several years after the entry of the dissolution judgment, petitioner started his own company, which greatly increased his income: from $138,000 at the

time of the dissolution judgment in 2011 to $2.2 million in 2018. In 2018, petitioner filed a petition to decrease the amount of child support he was required to pay, claiming that his increased income constituted a substantial change in circumstances and that 28% of his increased income would constitute a windfall to respondent. The trial court denied the petition, finding that the parties had contemplated petitioner's income fluctuating and his increased income therefore did not constitute a substantial change in circumstances. Petitioner appeals[1] and, for the reasons that follow, we reverse.

¶ 2                                                    BACKGROUND

¶ 3        The parties were married in 2002, and had two daughters, born in 2003 and 2005. Petitioner filed a petition for dissolution of marriage on September 11, 2007; respondent filed a counterpetition for dissolution of marriage on October 5, 2007. The dissolution proceedings were heavily contested, with both parties filing numerous motions against each other.

¶ 4        On May 3, 2011, the trial court entered a "final custody judgment,"[2] which provided that respondent was to have sole custody of the children, with petitioner receiving regular parenting time on every Thursday evening and every other weekend. On August 24, 2011, the court entered an agreed judgment for dissolution of marriage, which incorporated the May 3, 2011, final custody judgment. The judgment provided that petitioner was 47 years old and earned approximately $138,000 gross per year, and respondent was 38 years old and earned approximately $85,000 gross per year.

---

[1]Petitioner actually filed two appeals from the same judgment. As explained below, he initially filed a premature notice of appeal when there was a related matter pending before the trial court, then filed a second notice of appeal once the issue was resolved. We consolidated the two appeals and address them as a single appeal.

[2]While the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) no longer uses the term "custody," the court's order occurred under a prior version of the Marriage Act, which used the term in discussing allocation of parental responsibilities. See 750 ILCS 5/601 to 611 (West 2010).

¶ 5     As relevant to the instant appeal, the judgment contained the following provision regarding child support:

"From this day forward and until further Order of Court, [petitioner] shall pay [respondent] $2,226.00 (two thousand two hundred twenty six dollars) per month for child support, representing 28% of his net base pay, by automatic deduction from [petitioner's] pay and by forwarding through the State Disbursement Unit (SDU) ***. Additionally, [petitioner] shall pay [respondent] directly or to the SDU for forwarding to her, 28% of the net income from any bonuses or commissions he receives, within 14 days of receiving a bonus or commission payment. [Petitioner] shall provide [respondent] with documentation on or before January 30th of each year, showing his income from all sources for the previous calendar year."[3] (Emphases omitted.)

¶ 6     Several years after the entry of the dissolution judgment, on May 13, 2014, respondent filed a petition for an increase in child support based upon a substantial change in circumstances. Respondent claimed that petitioner was now a partner in a marketing business "and receives the majority of all promotional business income," meaning that petitioner was earning substantially more income than he was at the time of the August 24, 2011, judgment for dissolution of marriage and had the ability to pay an increased amount of child support. In his response, petitioner denied respondent's allegations. The petition was resolved by agreement on February 8, 2016, with petitioner paying respondent a total of $2800 per month; the order does not make clear if this amount was only the amount of child support or whether it included the medical and school expenses petitioner was also required to pay under the

_____

[3]Petitioner was also required to pay certain medical and school expenses, but those are not at issue on appeal.

dissolution judgment, but provided only that "[petitioner] [is] to pay [respondent] the sum of $2800 per month by electronic transfer."

¶ 7    Several years later, on April 18, 2018, petitioner filed a petition to decrease the amount of child support he was required to pay, claiming that there had been a substantial change in circumstances since the entry of the dissolution judgment, as both parties were earning more income than they had been at the time of the August 24, 2011, judgment, with petitioner earning "substantially" more income. Petitioner claimed that, since the amount of child support was not capped, respondent was receiving a windfall, "well beyond the needs of the children." Accordingly, petitioner sought a modification of his child support obligation "pursuant to the factors delineated in 750 ILCS 5/505."[4]

¶ 8    On May 22, 2018, respondent filed a motion to dismiss petitioner's petition to decrease his child support obligation pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)). Respondent claimed that the petition failed to set forth a substantial change in circumstances, as the July 1, 2017, amendments to the Marriage Act did not constitute a change in circumstances and "the child support provision contained in the parties' Judgment for Dissolution of Marriage entered August 24, 2011 already contemplates that Petitioner could be earning substantial additional income over and above his base salary."

¶ 9    On August 1, 2018, petitioner filed an amended petition to decrease his child support obligation, expanding on the allegations of his original petition. Petitioner claimed that, at the time of the dissolution judgment, his gross income was approximately $140,000, while in 2017,

---

[4]As we discuss further below, section 505 of the Marriage Act was substantially amended in 2017. See 750 ILCS 5/505 (West 2016). If the trial court found that there was a substantial change in circumstances, as the petition alleged, the new guidelines set forth in section 505 would apply. See *In re Marriage of Salvatore*, 2019 IL App (2d) 180425, ¶ 20.

his gross income was approximately $513,000. Petitioner pointed to the case of *In re Marriage of Singleteary*, 293 Ill. App. 3d 25 (1997), in support of his contention that the increase in his income constituted a substantial change in circumstances warranting a downward deviation of his child support obligation. In response, respondent again argued that the dissolution judgment contemplated that petitioner could be earning substantial additional income over his base salary and further claimed that "[t]his provision was agreed to based on Petitioner's historical earnings prior to the dissolution as he had previously earned income well over $500,000.00 per year for multiple years." Respondent claimed that the inclusion of the provision "inherently means that Petitioner understood that his income was going to resume to the levels they had been prior to the filing of the original Petition for Dissolution."

¶ 10    The parties came before the trial court for a hearing on the petition on July 30, 2019, at which both petitioner and respondent testified. Respondent testified that both children, who were 14 and 15 at the time, primarily lived with her. Respondent was employed and was currently engaged to be married; she testified to the accuracy of her financial affidavit, but testified that she would be moving to a new home once she remarried. Respondent also testified as to the circumstances surrounding the entry of the judgment for dissolution of marriage. She testified that, while the child support was set based on petitioner earning approximately $130,000 in income, in prior years, petitioner had made "[s]ignificantly more" income. She testified that, in 2004, petitioner made over $900,000 in income.

¶ 11    Petitioner testified that, at the time of the entry of the dissolution judgment, he was employed in sales by a marketing business, and earned approximately $138,000 per year. He continued to work for the same company for several years after the entry of the judgment and opened his own marketing and promotions company in November 2017. Petitioner testified

that he never made $900,000 in a year while working at his former employer, and the most he ever made was $824,000 per year; his income during other years was between $200,000 and $400,000. Petitioner testified to his income for each year after the 2011 dissolution judgment: in 2011, he earned $138,000 in income; in 2012, he earned $150,000; in 2013, he earned $150,000; in 2014, he earned $420,000; in 2015, he earned $395,000; in 2016, he earned $204,000; and in 2017, he earned $513,000. Petitioner testified that he opened his own company at the end of 2017 because he "secured a client that was going to generate significant revenue for me and my kids." In 2018, petitioner earned approximately $2.2 million in income.

¶ 12　　　On September 26, 2019, the trial court entered an order denying petitioner's petition to decrease his child support obligation. The court found that the parties' agreement, incorporated into the dissolution judgment, "clearly and unambiguously reflects that they expected that [petitioner] would continue to receive performance-based payments and, as a result, that his income would continue to fluctuate above his base salary." Consequently, the court found that the parties decided that petitioner would pay 28% of his performance-based income, "whatever that income may be." The court recognized that petitioner's income had increased considerably over the $138,000 that he earned at the time of the dissolution judgment, but found that this did not change the fact that the parties "built their agreement to automatically adjust his support obligation so that it would stay proportionate to his fluctuating income." The court also noted that, unlike petitioner's obligations to pay school and extracurricular expenses, petitioner's support obligation did not contain a cap. The court found: "With the terms of their agreement in mind, however unlikely a seven-figure salary may have seemed to either party at the time, this Court cannot say that a significant performance-based increase in [petitioner's] earnings was not contemplated when the agreement was made." Accordingly, the court found that

6

petitioner's current income did not constitute a substantial change in circumstances warranting a modification of his support obligation.

¶ 13       The court further found that, even if it had found that the agreement was ambiguous, the result would remain the same. The court noted that petitioner had worked in the same field for many years and that he testified that "landing one big account really changed the game for him." The court found that "[k]nowing [petitioner] worked in an industry where his earning[s] directly correlated with his performance, to say that the parties never contemplated he may one day land a big, game-changing client simply is not reasonable."

¶ 14       On October 24, 2019, petitioner filed a motion to reconsider, claiming that the trial court had misapplied the law and had abused its discretion in denying his petition to decrease his support obligation. In the alternative, petitioner requested a stay of the order so that he could appeal.

¶ 15       While his motion to reconsider was pending, on January 10, 2020, petitioner filed a motion to reopen proofs, claiming that since the entry of the court's September 26, 2019, order denying the petition to modify child support, there had been an additional change in circumstances: respondent had remarried and had sold her residence in order to move in with her new spouse. Consequently, the sale of the home provided respondent with substantial additional income, which petitioner argued should be considered in setting an appropriate award of child support. In response, respondent admitted that she had remarried, denied that the house had been sold, and argued that the sale of the house was irrelevant, as respondent's income had not factored into petitioner's child support obligation. On March 12, 2020, the trial court denied petitioner's motion to reopen proofs, and petitioner does not appeal that denial.

¶ 16     The court set a status date of March 19, 2020, to set a hearing date for petitioner's motion to reconsider, but the date was continued a number of times due to the COVID-19 pandemic.

¶ 17     On June 25, 2020, while his motion to reconsider was still pending, petitioner filed a motion to modify the final custody judgment, claiming that both children—who were now 15 and 16 years old—were currently residing primarily with petitioner. Petitioner claimed that the younger child had been residing primarily with him since February 2020 and the older child had been residing primarily with him since May 2020. Petitioner claimed that the children had a strained relationship with respondent's new spouse and had therefore moved in with petitioner not long after respondent's remarriage. Consequently, petitioner requested that the court modify the final custody judgment to award petitioner the majority of parenting time, consistent with the current arrangement, and to designate him as the primary residential parent.

¶ 18     On September 21, 2020, the trial court entered an order denying petitioner's motion to reconsider the September 26, 2019, order. The court also denied petitioner's request to stay the order in order to permit him to appeal. The court found that the existence of petitioner's pending motion to modify the custody judgment meant that the September 26, 2019, order and the September 21, 2020, order denying the motion to reconsider were not appealable orders. The court also found that the Marriage Act expressly prohibited staying the enforcement of a child support order pending appeal. The court's September 21, 2020, order did not address the new issues raised in petitioner's motion to modify the final custody judgment.

¶ 19     On October 19, 2020, petitioner filed a notice of appeal (No. 1-20-1136), appealing the September 26, 2019, denial of his petition to decrease his child support obligation and the September 21, 2020, order denying his motion to reconsider.

¶ 20    Proceedings on petitioner's motion to modify the final custody judgment continued, and, on December 4, 2020, the parties entered into an agreed order, which modified the final custody judgment to provide that the younger child would reside with petitioner, where she had been primarily residing since at least May 2020, and that petitioner would be named as the residential parent for both children for purposes of school enrollment.

¶ 21    On December 31, 2020, petitioner filed a second notice of appeal (No. 1-21-0003) in order to ensure there were no jurisdictional issues with his first notice of appeal. The two appeals were consolidated on January 20, 2021.

¶ 22                                    ANALYSIS

¶ 23    On appeal, petitioner contends that the trial court erred in finding that his increased income did not constitute a substantial change of circumstances for purposes of modifying his child support obligation. Prior to turning to the issues on appeal, we briefly discuss our jurisdiction to consider petitioner's appeal. It is well settled that, generally, parties may appeal only from final orders disposing of every claim in a case. *In re Marriage of Teymour*, 2017 IL App (1st) 161091, ¶ 12. However, Rule 304(a) permits interlocutory appeals of final judgments as to one or more, but fewer than all, parties or claims, so long as the trial court makes an express written finding that there is no just reason for delaying either enforcement or appeal or both. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). "Absent a Rule 304(a) finding, a final order disposing of fewer than all of the claims is not an appealable order and does not become appealable until all of the claims have been resolved." *In re Marriage of Gutman*, 232 Ill. 2d 145, 151 (2008); see also *In re Marriage of Crecos*, 2021 IL 126192, ¶ 45.

¶ 24    In the case at bar, at the time that the trial court denied petitioner's motion to reconsider the denial of his petition to decrease child support, there also remained pending petitioner's

motion to modify the final custody judgment. In light of this pending motion, which the trial court found to be related to the issue of petitioner's child support obligation, the trial court declined to enter a Rule 304(a) finding. Without such a finding, the trial court's order did not constitute a final and appealable order. See *Teymour*, 2017 IL App (1st) 161091, ¶ 43.[5] Thus, petitioner's notice of appeal in appeal No. 1-20-1136 was premature.

¶ 25    However, on December 4, 2020, the trial court disposed of the pending motion by entering an agreed order modifying the final custody judgment. At that point, there were no pending matters remaining, meaning that the trial court's order constituted a final judgment and petitioner could pursue his appeal under Rule 301, which provides for appeals of final judgments as of right. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). Petitioner's original notice of appeal would have then become effective under Rule 303(a)(2). Ill. S. Ct. R. 303(a)(2) (eff. July 1, 2017) (a notice of appeal filed before the final disposition of any separate claim becomes effective when the order disposing of such claim is entered). However, to ensure that there were no jurisdictional issues, petitioner filed a second notice of appeal in appeal No. 1-21-0003. Accordingly, because the trial court disposed of all pending matters through its December 4, 2020, order, we have jurisdiction to consider petitioner's claims on appeal.

¶ 26    Prior to turning to the merits of petitioner's appeal, however, we note that, no matter the outcome of the instant appeal, petitioner's support obligation will likely be changing shortly in the future. The parties' older daughter turned 18 on November 5, 2021, meaning that child support for her will terminate upon her graduation at the end of the school year. See 750 ILCS 5/510(d) (West Supp. 2017) (unless otherwise provided, provisions for child support are

---

[5]We note that our supreme court has recently clarified that a Rule 304(a) finding would have been necessary even if the trial court had determined that the two matters were unrelated. See *Crecos*, 2021 126192, ¶ 45.

10

terminated upon the age of 18 or, if the child is still in high school, upon the date of graduation or on the date the child turns 19, whichever is earlier). Additionally, as noted, on December 4, 2020, the parties modified their custody judgment to provide that the younger child would primarily reside with petitioner. According to respondent's brief on appeal, subsequent to the filing of the instant appeal, petitioner filed another petition for modification of child support, alleging that the change in residence constituted a substantial change in circumstances. Since that petition is not before us on this appeal, we cannot discuss its likelihood of success. However, a substantial change of parenting time can constitute a substantial change in circumstances sufficient to warrant a modification of a party's child support obligation. See *In re Marriage of Wengielnik*, 2020 IL App (3d) 180533, ¶ 13. Nevertheless, regardless of the longevity of the order at issue on appeal, we proceed to consider whether the trial court properly denied petitioner's petition to modify his support obligation based on his increased income of $2.2 million in 2018.

¶ 27     In 2011, when the trial court entered the agreed judgment for dissolution of marriage, the Marriage Act's child support guidelines were based on a percentage of the supporting party's net income. See 750 ILCS 5/505(a)(1) (West 2010). Under those guidelines, a supporting parent with two children was required to pay a minimum of 28% of his net income in child support. 750 ILCS 5/505(a)(1) (West 2010). However, the Marriage Act was amended in 2017, including substantial changes to the child support guidelines. See *In re Marriage of Salvatore*, 2019 IL App (2d) 180425, ¶ 18; *In re Marriage of Connelly*, 2020 IL App (3d) 180193, ¶ 16. The amended guidelines now provide for an award of child support on an "income-shares" model, which takes into account the incomes of both parents. *Salvatore*, 2019 IL App (2d) 180425, ¶ 18; *Connelly*, 2020 IL App (3d) 180193, ¶ 16. See 750 ILCS 5/505(a)(1.5) (West

11

Supp. 2017). The amended guidelines apply to child support proceedings commenced after July 1, 2017; if the child support judgment was entered prior to July 1, 2017, the amended guidelines will apply only if the obligor can establish a substantial change in circumstances. *Connelly*, 2020 IL App (3d) 180193, ¶ 16; 750 ILCS 5/510(a) (West Supp. 2017). However, a disparity in child support obligations under the preamended guidelines and the amended guidelines does not, in itself, constitute a substantial change in circumstances justifying modification of child support. *Salvatore*, 2019 IL App (2d) 180425, ¶ 19; *Connelly*, 2020 IL App (3d) 180193, ¶ 16; 750 ILCS 5/510(a) (West Supp. 2017).

¶ 28    In the case at bar, petitioner sought to modify his child support obligations by claiming that his increased income of $2.2 million in 2018 constituted a substantial change in circumstances. A petition to modify a payment order, such as the support order at issue in the case at bar, requires the trial court to engage in a two-step process: a judicial determination on a question of fact as to whether there has been a change in circumstances and, if so, whether and by how much to modify the support ordered. *In re Marriage of Barnard*, 283 Ill. App. 3d 366, 370 (1996). Because it is a question of fact, the determination of whether a substantial change of circumstances occurred is reviewed under the manifest weight of the evidence standard of review. *In re Marriage of Armstrong*, 346 Ill. App. 3d 818, 821 (2004); *Wengielnik*, 2020 IL App (3d) 180533, ¶ 12. "A judgment is against the manifest weight of the evidence only when the opposite conclusion is clearly apparent." *In re Parentage of J.W.*, 2013 IL 114817, ¶ 55. "In determining whether a judgment is contrary to the manifest weight of the evidence, the reviewing court views the evidence in the light most favorable to the appellee. [Citation.] Where the evidence permits multiple reasonable inferences, the reviewing court will accept

those inferences that support the court's order. [Citation.]" *In re Marriage of Bates*, 212 Ill. 2d 489, 516 (2004).

¶ 29    However, where the issue raised on appeal involves the legal effect of a set of undisputed facts, the applicable standard of review is *de novo*. *Salvatore*, 2019 IL App (2d) 180425, ¶ 22; *In re Marriage of Durdov*, 2021 IL App (1st) 191811, ¶ 19. Similarly, where the issue concerns the interpretation of a marital settlement agreement, we review it *de novo* as a question of law. *Blum v. Koster*, 235 Ill. 2d 21, 33 (2009); *Salvatore*, 2019 IL App (2d) 180425, ¶ 22; *Durdov*, 2021 IL App (1st) 191811, ¶ 19. *De novo* consideration means we perform the same analysis that a trial judge would perform. *In re Marriage of Wendt*, 2013 IL App (1st) 123261, ¶ 15.

¶ 30    In the case at bar, while we are reviewing the language of the agreed judgment for dissolution of marriage under a *de novo* standard of review, the trial court's determination also involved factual findings concerning the parties' intent from their testimony at the hearing to modify child support. Thus, we review these factual findings under the manifest weight standard of review. Finally, we note that, where a trial court makes an error of law, such an error ordinarily constitutes an abuse of discretion. *Macknin v. Macknin*, 404 Ill. App. 3d 520, 530 (2010) (citing *Koon v. United States*, 518 U.S. 81, 100 (1996)); *Cable America, Inc. v. Pace Electronics, Inc.*, 396 Ill. App. 3d 15, 24 (2009). After reviewing the language of the agreed judgment for dissolution and the parties' testimony, we cannot find any evidence that the parties intended that, if the petitioner earned 16 times the amount he was earning at the time of the dissolution, such a great increase would not constitute a substantial change in circumstances. As a result, we must reverse the trial court's denial of petitioner's petition to decrease child support based on the trial court's finding that this great increase was contemplated, and we would make that decision based on any of the above standards of review.

¶ 31    As noted, under the Marriage Act, an order for child support may be modified "upon a showing of a substantial change in circumstances." 750 ILCS 5/510(a)(1) (West 2016). The burden of demonstrating such a substantial change in circumstances is on the party seeking the relief. *Singleteary*, 293 Ill. App. 3d at 34. It is important to note that not all changes in circumstances constitute a "substantial" change in circumstances for purposes of modifying a child support award. *Connelly*, 2020 IL App (3d) 180193, ¶ 18. "A substantial change in circumstances typically means that the child's needs, the obligor parent's ability to pay, or both have changed since the entry of the most recent support order." *In re Marriage of Verhines*, 2018 IL App (2d) 171034, ¶ 79. However, a substantial change in circumstances is not limited to adverse circumstances. *Singleteary*, 293 Ill. App. 3d at 34. "The law is clear that only some change in circumstances *of any nature* that would justify equitable action by the court in the best interests of the child is required." (Emphasis in original.) *Singleteary*, 293 Ill. App. 3d at 35.

¶ 32    A substantial change in circumstances may be based solely on an increase in the supporting parent's ability to pay. *Connelly*, 2020 IL App (3d) 180193, ¶ 19; *In re Marriage of Putzler*, 2013 IL App (2d) 120551, ¶ 29. However, courts will generally not find a substantial change in circumstances where the increase in income is relatively small. *Durdov*, 2021 IL App (1st) 191811, ¶ 22; *Connelly*, 2020 IL App (3d) 180193, ¶ 19. Additionally, "when the parties have entered a marital settlement agreement, as is the case here, a substantial change in circumstances will not be found when the parties' present circumstances were contemplated when they entered their agreement." *Salvatore*, 2019 IL App (2d) 180425, ¶ 24; *Connelly*, 2020 IL App (3d) 180193, ¶ 22; *Durdov*, 2021 IL App (1st) 191811, ¶ 22.

¶ 33    In the case at bar, the increase in petitioner's income cannot be considered small; clearly, an increase from $138,000 to over $2 million is an extremely large increase in income, which would support a finding of a substantial change in circumstances. See, *e.g.*, *Singleteary*, 293 Ill. App. 3d at 35 (finding an increase in income from $90,000 to $300,000 to be a substantial change in circumstances). Instead, the trial court found that the increase in income did not constitute a substantial change in circumstances because it was contemplated by the parties when the agreed judgment for dissolution of marriage was entered. The agreed judgment contained the following provision regarding child support:

"From this day forward and until further Order of Court, [petitioner] shall pay [respondent] $2,226.00 (two thousand two hundred twenty six dollars) per month for child support, representing 28% of his net base pay, by automatic deduction from [petitioner's] pay and by forwarding through the State Disbursement Unit (SDU) ***. Additionally, [petitioner] shall pay [respondent] directly or to the SDU for forwarding to her, 28% of the net income from any bonuses or commissions he receives, within 14 days of receiving a bonus or commission payment. [Petitioner] shall provide [respondent] with documentation on or before January 30th of each year, showing his income from all sources for the previous calendar year." (Emphases omitted.)

The clear language of this provision indicates that the parties contemplated that petitioner would receive some income above and beyond his base pay, in the form of bonus or commission payments, and agreed that petitioner would pay 28% of such income in child support. Generally, "true-up" language has been held to support a finding that there was no substantial change in circumstances due to an increase in the supporting party's income because the presence of such language indicates that the parties contemplated some change in

15

income. See, *e.g.*, *Durdov*, 2021 IL App (1st) 191811, ¶ 28; *Connelly*, 2020 IL App (3d) 180193, ¶ 25. However, contrary to respondent's assertion that such cases "contained language almost exactly the same as the present case," these cases contained more expansive language, making clear that the supporting party would pay a percentage of *any* additional income. See *Durdov*, 2021 IL App (1st) 191811, ¶ 28 (provision required supporting party to pay " 'an amount equal to twenty-eight percent (28%) of *any additional net income received* from any other source including but not limited to bonuses, commissions, compensation for consulting projects, and other forms of income' " (emphasis in original)); *Connelly*, 2020 IL App (3d) 180193, ¶ 4 (provision required supporting party to pay "28% of 'the net of any future performance bonus, commission, or additional income over [his] current annual base gross income of $100,000' ").

¶ 34     Here, by contrast, the provision requires petitioner to pay 28% of "the net income from any bonuses or commissions he receives." While respondent repeatedly claims in her brief that this provision requires petitioner to pay "28% of any additional income," paying 28% of "the net income from any bonuses or commission" is certainly not identical to paying 28% of "any additional income." Thus, while it is clear that the parties provided for fluctuation in petitioner's income via bonuses and commissions, we cannot go so far as to say that the parties contemplated that *any* increase in income would not be a substantial change in circumstances. We also note that the cases cited by respondent involve significantly smaller increases in income; respondent has cited no case in which a court has found that an increase of 16 times the amount earned at the time of the judgment for dissolution would not be a substantial change in circumstances due to the presence of "true-up" language.

¶ 35    Additionally, we are troubled by the fact that the trial court's order denying petitioner's petition to modify child support does not discuss the fact that petitioner's increased income was the result of his starting his own company. While the court mentions the change in employment in its recitation of the facts in its order, the court does not consider the impact of this change in its analysis. Respondent also downplays this fact in her brief on appeal. However, we find this fact to be helpful in the disposition of the issue on appeal.

¶ 36    The record is not clear as to when petitioner began his job as a salesman in the marketing business. However, when testifying about petitioner's income, respondent testified that petitioner earned over $900,000 in 2004, which suggests that petitioner had been in the business at least that long.[6] Thus, at the time of the 2011 entry of the agreed judgment for dissolution for marriage, petitioner had been working in the same business for at least seven years. Petitioner testified that he continued to work in the same business until he formed his own company in November 2017, an additional six years. Consequently, it is clear that, at the time that the parties entered into the agreed judgment for dissolution of marriage, petitioner's position as a salesman in a marketing business was well established, as was the fact that his compensation was in the form of base pay plus bonuses or commissions.

¶ 37    However, as of November 2017, petitioner is no longer employed as a mere employee but formed his own company. While the record is not well developed on this point, it appears that petitioner is no longer paid under the same formula of base pay plus bonus or commission. Whatever the method of compensation, it is clear that petitioner is being paid substantially more than he was as an employee, earning $2.2 million in 2018. We cannot say that the parties

---

[6]We note that petitioner denied ever earning $900,000 and testified that the most he ever earned was $824,000. The trial court found it unnecessary to determine petitioner's actual income, and we agree that it is not relevant to our analysis—the important aspect is that petitioner was working as a salesman in 2004.

contemplated that petitioner would start his own business and earn such a substantial increase in income, and there is no language in the agreed judgment for dissolution of marriage supporting such an interpretation.

¶ 38    We also must note that, earlier in the postdissolution proceedings, respondent herself suggested that a change in the type of employment—and its resulting increase in income—could constitute a change in circumstances. In 2014, respondent filed a petition to modify child support, arguing that petitioner's promotion within the marketing business constituted a substantial change in circumstances because he was now "receiv[ing] the majority of all promotional business income," which greatly increased his income. While respondent's petition was resolved by agreement, the fact that it was filed suggests that a change in petitioner's *type* of employment was not contemplated by the parties in the agreed judgment for dissolution.

¶ 39    In the case at bar, petitioner works in a different capacity, in a different company, and making substantially more income than he was at the time of the entry of the agreed judgment for dissolution of marriage. This is not a case in which a party's income naturally fluctuates because of the nature of his job. This is a case in which a party has more income because of different employment. Nobody has argued—and the trial court never found—that the increase in petitioner's income was small or negligible or that an increase in income cannot serve as the basis for modification. Instead, the question on appeal is whether such an increase can be found to have been contemplated by the parties at the time of the entry of the dissolution judgment. We cannot find any evidence that the parties contemplated such an increase under the facts of this case. There is no evidence that was presented by the parties in this case that shows a contemplation that petitioner's income would increase from $138,000 per year to $2.2 million

18

due to petitioner forming his own company. Although petitioner's income did fluctuate, and there is evidence that the parties contemplated the fluctuation in the context of the job petitioner held at the time of the agreed judgment for dissolution, that fluctuation did not rise to the level of millions until 2018, after petitioner had formed his own company. Consequently, we must find that the trial court erred in finding that petitioner had failed to establish a substantial change in circumstances.

¶ 40    As a final matter, petitioner makes several arguments concerning whether the amount of support would constitute a windfall and whether the children's needs justify the amount of support. However, because we have determined that the trial court should have found that there was a substantial change in circumstances, we do not proceed to the second step of analyzing what a proper amount of support would be but leave that determination to the trial court to make in the first instance. See *Armstrong*, 346 Ill. App. 3d at 823 ("Only after determining the threshold issue of whether a substantial change in circumstances has occurred can a court consider modifying a child support order.").

¶ 41                                    CONCLUSION

¶ 42    For the reasons set forth above, the parties' marital settlement agreement, as expressed in the agreed judgment for dissolution of marriage, contemplated only that petitioner's income would fluctuate due to his work as a salesman and did not contemplate that petitioner would form his own company, resulting in substantially increased income. Consequently, the trial court erred in finding that the present increase in his income does not constitute a substantial change in circumstances and the trial court should have granted petitioner's petition to modify his child support obligation.

¶ 43    Reversed and remanded.

---

**No. 1-20-1136**

---

| | |
|---|---|
| **Cite as:** | *In re Marriage of Yabush*, 2021 IL App (1st) 201136 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 07-D-9184; the Hon. Diana Rosario, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Paul L. Feinstein, of Paul L. Feinstein, Ltd., of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Michael Schatz, of Schatz & Shaughnessy, P.C., of Tinley Park, for appellee. |

---