**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 240438-U

Order filed January 5, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| MAI HANH LEIFKE, | ) | Du Page County, Illinois, |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | Appeal No. 3-24-0438 |
| and | ) | Circuit No. 20-D-1882 |
| | ) | |
| ECKHARD LEIFKE, | ) | Honorable |
| | ) | Kenton J. Skarin, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices Holdridge and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   The court's finding that there was a substantial change in circumstances was not against the manifest weight of the evidence. The court's decision to change indefinite maintenance to term maintenance was an abuse of discretion.

¶ 2    Petitioner, Mai Hanh Leifke, appeals the Du Page County circuit court's order terminating her indefinite maintenance award as of March 2026. She argues that there was no change in circumstances and that the conversion from indefinite maintenance to term

maintenance was arbitrary and against public policy. We reverse and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4        Mai and respondent, Eckhard Leifke, were married on September 2, 1998, in Germany. Two children were born into the marriage, one in June 2000 and one in December 2001. The parties relocated to the United States in 2006. On December 7, 2009, while living in the U.S., Eckhard filed for divorce in Germany. A decision was entered on August 29, 2013. Eckhard was required to pay maintenance and child support. Both parties appealed. While the appeals were pending, Eckhard obtained custody of the children in 2016. The children had been with Mai since February 2009. The appeals were decided on January 18, 2019.

¶ 5        The 2019 order thoroughly discussed the court's reasoning as to maintenance. In doing so, the court stated that Mai's entitlement to maintenance was indicated by the parties' standard of living during the marriage, which had largely been funded solely by Eckard's income, "and by the fact that [Mai] will never be able to maintain this living standard from her own resources, even if considerable efforts are made." The court noted that Mai did not have any significant assets of her own from which she could earn a living, and she did not receive any significant assets from the division of the marital estate. The order set forth that Eckhard had a very comfortable income and would continue that lifestyle in the foreseeable future. The court stated that because Mai was "also obliged to earn a living does not speak against this. This plays a role in the amount of the maintenance claim" but does not prevent an award of maintenance. The court calculated Mai's needs, based upon the marital living conditions, as $4,986.86 per month.

¶ 6        The court discussed Mai's obligation to earn an income and determined that Mai should have income imputed to her. It noted that Mai asserted that she was unable to engage in gainful

employment due to her precarious state of health. However, the court noted that she bore the burden of proof on that issue. The court found that medical records Mai submitted did not go beyond superficial descriptions of symptoms and failed to adequately describe the nature and duration of any impairments. Additionally, the court noted that age and language difficulties were not a sufficient reason for the failure to obtain some level of employment. The court found that although the children were still relatively young in the first years of separation and following the divorce, they were in school such that Mai could have worked 30 hours per week. Also, beginning in 2016, after the youngest child turned 16, she could have worked 40 hours per week. For these reasons, the court imputed income to Mai based upon a minimum wage of $8.25 per hour.

¶ 7    The court then discussed the term of maintenance. The court noted that when the party entitled to maintenance is not in a position to generate income which secures him or her the marital standard of living, Illinois courts tend to grant maintenance without a termination date. The court calculated the length that maintenance would have to be paid under the statutory guidelines but stated:

> "this result is to be corrected in favor of [Mai] due to the high-income marriage, *** the lack of career development opportunities for [Mai]—she will never be able to achieve a standard of living comparable to that lived during the marriage, even with the greatest effort —, the fact that she lived as a housewife with two children during the marriage and the fact that [Eckhard] was able to pursue his career undisturbed during this time."

The court noted that Mai had "categorically rejected" a position at the German Consulate General and took that into consideration. Further, it stated that Mai:

"has not been compensated in any other way for the services she rendered during the marriage. She herself was unable to form any significant assets during the marriage. Her final assets are even lower than her initial assets. Her entitlement to equalization of accrued gains hardly enables her to live a life of financial independence. No significant income can be earned from this. It must also be taken into account that in view of her low professional qualifications—unlike the wives in the cases cited by [Eckhard] ***—[Mai] does not have the possibility either in the USA or elsewhere to attain a professional position that allows her to maintain even remotely the standard of living she enjoyed during the marriage."

Additionally, the court stated "[t]he fact that she did not even try within the modest possibilities available to her to find employment and to contribute to her own living costs was taken into account when establishing the amount of maintenance to be granted. This does however not justify a time limit of the maintenance." The court found that maintenance should be awarded without a termination date. The court awarded past due maintenance and maintenance in the amount of $4,003.82 per month beginning January 1, 2019, with no termination date.

¶ 8       Less than two years later, Eckhard filed a verified petition to register foreign judgment for dissolution of marriage and on October 29, 2020, he filed a petition to terminate or reduce maintenance. He alleged, among other things, that Mai had not attempted to obtain gainful employment and failed to make a good-faith effort to obtain employment. Eckhard served the petition by publication. Mai failed to appear. The court found Mai to be in default and entered an order terminating maintenance and entering judgment in Eckhard's favor for overpayment of maintenance. Mai filed a motion to vacate the default order. Ultimately, the court entered an agreed order vacating the default order, which thereby reinstated maintenance. The court entered

4

another agreed order, which set forth the amount of retroactive maintenance Eckhard owed. On March 8, 2023, Eckhard filed an amended petition to terminate or reduce maintenance. The petition argued that there was a substantial change in circumstances since the 2019 order because Mai had not made meaningful efforts to obtain employment and become more financially independent. The petition further argued that a substantial change in circumstances occurred in relation to the calculation of maintenance. Specifically, that Mai had been living in California since 2020 and that the minimum wage in California was $15.50, nearly double the amount imputed to Mai in the 2019 order. Eckhard argued that imputing income to Mai at $15.50 would result in a net reduction in maintenance payments of approximately $10,000 per year. Further, he argued that the calculation did not factor in that had Mai been working since 2019, she would be earning more than minimum wage. Eckhard argued for termination of maintenance but alternatively argued that at a minimum, the amount of maintenance should be reduced.

¶ 9    The petition proceeded to trial. Mai testified that she was born in Vietnam and lived in Germany before moving to the United States. She did not have a college degree. Mai testified that she currently lived in California. Mai had previously worked as an interpreter but had not done so since 2006. Mai had not worked as an interpreter in the United States. She stated that part of her reason for not doing so was that Eckhard promised that she would not need to work when they moved to the United States. Mai testified that since living in the United States she had not sought any employment. Mai testified regarding her reasons for not obtaining employment, including Eckhard's promise and various physical ailments and side effects of medication from which she allegedly suffered. Mai stated that she had no income other than the maintenance payments from Eckhard. She testified that she was not living the same lifestyle as she did throughout her marriage. Mai admitted that in order to rent an apartment, she was employed for a

5

few days to show that she had an income. Mai drove to California in February 2020. She stayed in San Diego from February through August 2020. At the time of trial, Mai lived in Laguna Hills. She was renting a room in a house where five other people lived. Mai was sharing a bathroom with three other people. She also shared the kitchen and refrigerator with all the others living in the house. Numerous exhibits were admitted. Additionally, the parties stipulated to various facts, including the amount of Eckhard's income for the relevant years.

¶ 10    The parties submitted written closing arguments. Eckhard argued that the substantial change in circumstances was Mai's failure to make a good faith effort to obtain employment. Additionally, the minimum wage in California at that time was $15.50 per hour but the German court had used $8.25 per hour when calculating Mai's imputed income. He argued that the court could take judicial notice of the minimum wage. Mai argued that there was no substantial change in circumstances.

¶ 11    The court entered its order on March 15, 2024. The court noted that it had the opportunity to evaluate the credibility and demeanor of the witnesses, which was important for this case. The court found that Eckhard had paid Mai a total of $531,901.82 in maintenance for a marriage that lasted a little over 11 years at the time of filing. The court noted that the parties stipulated to Eckhard's income as: 2016—$358,953.94, 2017—$389,609, 2019—$556,646, 2020—$1,929,580, 2021—$1,017,345, 2022—$681,006, and 2023 (through 8/15/23)—$667,264.[1] The court also noted that the 2019 order set indefinite or permanent maintenance because the German court found that Mai did not have the ability to obtain work at a level that would allow her to maintain the marital standard of living. It then stated, "The court is convinced, as a matter of

_____

[1]The court noted that the stipulations by the parties did not include income for 2018.

6

fact, that [Mai] has done *nothing* to obtain *any* employment since the German appellate court's decision over four years ago." The court stated that it had observed Mai's demeanor during her testimony and found her claim that she was unable to work to be incredible. Specifically, the court found Mai's testimony with respect to her ability to work to be intentionally evasive and incredible. The court set forth various examples of the observations that led to its credibility determination. The court found that Mai was able to work and had "simply chosen not to do so since the 2019 German appellate court's decision." The court found that the failure to seek employment was a substantial change in circumstances.

¶ 12    The court then discussed issues with regard to resetting maintenance. The court noted that the statutory guidelines did not apply. Therefore, the maintenance award was at the court's discretion, after consideration of the relevant statutory factors. The court stated that it had considered all of the factors. The court noted that Mai contributed to the initial efforts that led to Eckhard's current income. However, for 14 years Eckard, without Mai's assistance, worked to increase the value of the skills he and Mai worked to develop during the marriage. The court found that it was "too simplistic to say only that [Eckhard] has done well since he was divorced, therefore he must pay [Mai] more." The court determined that it would not end all maintenance for Mai stating that there was:

> "no factual question that [Mai] lacks any meaningful marketable skills. She is employable at a minimum wage level and likely no more. The German appellate court found (and this court agrees) that she is not able to earn sufficient income to live at the standard of living during the marriage, which standard of living is established by the German appellate court's judgment."

The court then noted that the length and amount of maintenance paid by Eckhard over more than 14 years was dramatic for a marriage that lasted a little more than 11 years. The court further set forth that while the guidelines were not controlling, they would have provided for maintenance for about five and one-half years. The court stated that Eckhard had been paying maintenance for longer than the marriage had lasted, and well over double the guideline duration. The court further stated that the amount of maintenance paid was significant. The court, after considering all of the factors and "recognizing the truly unique circumstances of this very challenging case," ordered that Eckhard was to continue paying Mai maintenance in the amount of $4,003.82 per month, as set by the 2019 order. Maintenance was retroactive to November 1, 2020, and the maintenance obligation would terminate 65 months from November 1, 2020, with the last payment due on March 1, 2026.

¶ 13        Mai filed a motion to reconsider. The court granted the motion in part that is not relevant here and otherwise denied the motion. Mai appeals.

¶ 14                                      II. ANALYSIS

¶ 15        Mai argues that her unemployment is not a substantial change in circumstances. Specifically, she argues that there is no change because she was unemployed at the time of the 2019 order and is still unemployed now. Additionally, Mai argues that the court erroneously treated her maintenance as rehabilitative. In this regard, she argues that the court improperly gave exclusive weight to the failure to make sufficient efforts to become self-supporting. Further, Mai argues that the conversion of her permanent maintenance to term maintenance was arbitrary and contrary to public policy. She argues that Illinois common law provides that the remedy for insufficient efforts to become self-supporting in permanent maintenance cases is not to terminate maintenance but to impute income and reduce the award, which the 2019 order did. Eckhard

8

argues that under Illinois law, the failure to make a good-faith effort to become self-supporting may be a substantial change in circumstances warranting termination or modification of maintenance. He further argues that indefinite maintenance may be terminated when the recipient fails to make any effort to become self-supporting. He argues that the court properly recognized the maintenance award to Mai as indefinite. Eckhard argues that because Mai refused to make any effort to become self-sufficient, it was speculative what her ability to work and support herself would be if she had done so. In making this argument, Eckhard also referenced his closing argument, wherein he argued that the minimum wage in California had significantly increased from the amount the 2019 order utilized. Eckhard further argues that the court's maintenance determination was warranted by, and reflected a thorough evaluation of, the statutory factors.

¶ 16        "The four common types of maintenance included in a final judgment are: (i) permanent maintenance (indefinite in duration); (ii) rehabilitative maintenance for a fixed term (terminates on the term's end or the occurrence of some event); (iii) rehabilitative maintenance (subject to a set review date); and (iv) maintenance in gross ***." *In re Marriage of Shen*, 2015 IL App (1st) 130733, ¶ 84. "Maintenance for an indefinite term is appropriate where it is evident the recipient spouse is either unemployable or employable only at an income considerably lower than the standard of living established during the marriage." *In re Marriage of Dunseth*, 260 Ill. App. 3d 816, 833 (1994). "[A] spouse awarded indefinite maintenance has a good-faith obligation to work toward becoming self-sufficient" and "must seek and accept appropriate employment." *Id.* The goal of self-sufficiency "must be balanced against a realistic appraisal of the likelihood that the spouse will be able to support herself in some reasonable approximation of the standard of living established during the marriage." *In re Marriage of Cheger*, 213 Ill. App. 3d 371, 378

(1991). "The dependent former spouse is entitled to continue to live in some approximation to the standard of living established during the marriage, unless the payor spouse's financial situation indicates otherwise." *Dunseth*, 260 Ill. App. 3d at 833.

¶ 17        Permanent or indefinite maintenance may be modified or terminated as provided in section 510 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510 (West 2020)). *Shen*, 2015 IL App (1st) 130733, ¶ 84. Section 510 (a-5) of the Act provides for the modification or termination of maintenance upon a substantial change in circumstances. 750 ILCS 5/510(a-5) (West 2020). "A substantial change in circumstances warranting modification may occur upon *** the lack of good-faith effort on the part of the recipient spouse to achieve economic independence [citation]." *In re Marriage of Brent*, 263 Ill. App.3d 916, 922 (1994). A petition to modify a payment order, such as a maintenance order, "requires the trial court to engage in a two-step process: a judicial determination on a question of fact as to whether there has been a change in circumstances and, if so, whether and by how much to modify the support ordered." *In re Marriage of Yabush*, 2021 IL App (1st) 201136, ¶ 28. "Because it is a question of fact, the determination of whether a substantial change of circumstances occurred is reviewed under the manifest weight of the evidence standard of review." *Id.* "A decision is against the manifest weight of the evidence only when an opposite conclusion is clearly apparent or when the court's findings appear to be unreasonable, arbitrary, or not based upon the evidence." *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 44. The court's decision to modify or terminate maintenance is reviewed for an abuse of discretion and "we will reverse only if the court's determination was arbitrary, fanciful, or unreasonable." *In re Marriage of Bernay*, 2017 IL App (2d) 160583, ¶ 13.

¶ 18        Initially we must determine whether the court's finding that there was a substantial change in circumstance was against the manifest weight of the evidence. We conclude that it was not. Specifically, Illinois case law has stated that the failure of the recipient spouse to make a good faith effort to become self-sufficient can be a change in circumstances. See *e.g. Brent*, 263 Ill. App. 3d at 922. Further, it is undisputed that Mai did not attempt to obtain employment since the 2019 order entered, with the exception of a few days of employment in order to show an income to obtain an apartment. More importantly, as Eckhard argued below, Mai had relocated to California and the minimum wage in California at the time of trial ($15.50 per hour)[2] was significantly higher than the minimum wage ($8.25 per hour) that the 2019 order imputed to Mai. Essentially, because Mai had an obligation to seek and accept appropriate employment, her failure to do so, coupled with the significantly increased minimum wage since the 2019 order, provided a sufficient basis for the court to determine that a change in circumstances had occurred.

¶ 19        The next question we must consider is whether the court's modification of maintenance from indefinite to term with a March 2026 termination date was an abuse of discretion. As stated above, the goal of self-sufficiency must be balanced with the realistic likelihood that Mai will be able to support herself in some reasonable approximation of the standard of living established during the marriage. See *Cheger*, 213 Ill. App. 3d at 378. The 2019 order was clear that Mai would never be able to maintain the marital standard of living, even if she made considerable efforts. The trial court noted this finding and agreed when it stated that there was "no factual question that [Mai] lacks any meaningful marketable skills. She is employable at a minimum

_____

[2]In his closing argument, Eckhard had cited Illinois law (735 ILCS 5/8-1001 (West 2020)) allowing judicial notice of California's law regarding the minimum wage (California Labor Code § 1182.12(b)(2)(F) and (c)(1) (West 2020)).

11

wage level and likely no more. The German appellate court found (and this court agrees) that she is not able to earn sufficient income to live at the standard of living during the marriage." Considering these findings, it was unreasonable for the court to modify maintenance to term maintenance with a termination date in March 2026. We acknowledge the trial court entered a thorough order citing the statutory factors. However, the operative facts pivotal to this decision were straightforward and determined by both courts, Mai is only capable of employment at a minimum wage level. Thus, the court's ultimate decision is at odds with the statement in *Walker* that Mai "should not be required to lower the standard of living established in the marriage as long as the payor spouse has sufficient assets to meet his needs and the needs of his former spouse." *In re Marriage of Walker*, 386 Ill. App. 3d 1034, 1044 (2008). We note that Eckhard's income has increased significantly since 2019 and that he acknowledged in his brief and at oral argument that his ability to pay maintenance was not at issue.

¶ 20    We acknowledge that the specific findings of the German court that Mai will only be capable of minimum wage-level employment and its ruling that maintenance should be indefinite or "permanent" significantly limits the factual scenarios in which termination would be supported by the law. However, that was the court's ruling.

¶ 21    We note that as we have concluded that the court properly found a substantial change in circumstances and that conclusion rested partly on the fact that the minimum wage in California was significantly higher than what was originally imputed to Mai, it would be appropriate to modify maintenance. For example, maintenance could be modified to account for additional income Mai should be earning if she had fulfilled her obligation to seek employment in good faith. In modifying maintenance, the court may take into account the higher minimum wage and any other relevant factors. However, the outright termination of maintenance in light of both

12

courts' findings that Mai is unable to earn sufficient income to live at the marital standard of living was unreasonable. Thus, we vacate the order modifying permanent maintenance to rehabilitative maintenance for a fixed term and remand the matter for further proceedings consistent with this order.

¶ 22                                    III. CONCLUSION

¶ 23          The judgment of the circuit court of Du Page County is reversed and the matter remanded.

¶ 24          Reversed and remanded.