2019 IL App (2d) 180425
No. 2-18-0425
Opinion filed March 8, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF BRENDA SALVATORE, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | No. 13-DV-1029 |
| DANIEL SALVATORE, | ) ) ) | Honorable Mark R. Facchini, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion
Presiding Justice Birkett and Justice Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1     Respondent, Daniel Salvatore, appeals the denial of his petition to modify his child support obligation.  He argues that the McHenry County circuit court's ruling was erroneous because there has been a substantial change in circumstances since the dissolution of his marriage to petitioner, Brenda Salvatore.  Namely, Daniel argues that his child support obligation should be decreased based on Brenda's income from her recent employment.  We affirm.

¶ 2                                    I. BACKGROUND

¶ 3     The record reflects that the parties were married in January 2001.  Three children were born to them during their marriage, none of whom have yet reached the age of emancipation.  The parties filed cross-petitions for dissolution of marriage in January 2014.  On August 26,

2015, the trial court entered a judgment of dissolution that approved and incorporated the parties' joint parenting agreement (JPA) and marital settlement agreement (MSA). Pursuant to the JPA, all three children reside primarily with Brenda. Pursuant to the MSA, both parties waived their rights to maintenance.

¶ 4 Relevant here, by the terms of the MSA, Daniel agreed to pay Brenda child support in the amount of $8100 per month. The MSA stated that this amount represented 32% of Daniel's net income of $25,312 per month from his dental practice. It noted that this calculation was based solely on Daniel's individual tax returns and was in accordance with the child support guidelines in section 505 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/505 (West 2014)).

¶ 5 Although the parties contemplated the possibility of Brenda's future employment elsewhere in their agreements, they made no such references in the "Child Support" section of the MSA. A provision labeled "Termination of Child Support" provided that Daniel's obligation with respect to each child would terminate "on the child's eighteenth birthday or upon completion of high school, whichever occurs later, but in no event shall child support extend beyond each child's 19th birthday." However, the "Termination of Child Support" provision also stated that nothing contained therein would be construed to prevent a modification of Daniel's obligation.

¶ 6 On November 1, 2017, Daniel filed a petition to modify child support, arguing that his decreased income constituted a substantial change in circumstances. He further noted that the child support guidelines in section 505 of the Act had recently been changed and that the nonsupporting parent's income is now factored into a determination of the supporting parent's child support obligation. Although Daniel made no argument that Brenda's income constituted a

substantial change in circumstances, he nonetheless maintained that it was an appropriate basis for lowering his child support obligation. According to Daniel, Brenda's gross income from her new job was approximately $45,000 per year. Daniel argued that, applying the current section 505 guidelines and factoring in Brenda's income, his monthly child support obligation should be reduced from $8100 to $3244.

¶ 7    On January 15, 2018, Brenda filed a petition for an adjudication of indirect civil contempt, alleging that Daniel had recently violated several terms of the MSA, including failing to satisfy his child support obligation. On January 29, 2018, Daniel filed a petition for a rule to show cause as to why Brenda should not be held in indirect civil contempt, alleging that Brenda had violated the terms of the MSA with respect to medical expenses and homeowner insurance costs.

¶ 8    On April 5, 2018, the parties appeared for a hearing on all outstanding matters, beginning with Daniel's petition to modify his child support obligation. Brenda testified that she was unemployed when the judgment of dissolution was entered on August 26, 2015. However, in the preceding years she had performed office work for two separate dental practices. She earned approximately $20 per hour in these jobs, although the precise amount of her gross earnings was unclear from the parties' joint tax returns. Following the judgment of dissolution, Brenda remarried and started working as a triage nurse, earning $26 to $30 per hour depending on shift differentials. She confirmed her statement in her financial affidavit that her gross monthly income was $3451. However, her gross earnings for the 2017 tax year were only around $23,500, as she had taken a maternity leave.

¶ 9    Daniel testified that his individual 2017 tax return showed a gross income that was significantly less than his gross incomes from prior years. However, he acknowledged during

cross-examination that there were discrepancies between the gross receipts from his business checking account and the amount reflected on his business's tax return. He also acknowledged that he had deposited several large sums into his personal bank account during 2017 that were not reflected in his gross income. According to Daniel, these discrepancies resulted from his payment of business tax liabilities from past years.[1]

¶ 10    At the close of Daniel's case-in-chief, Brenda moved for a directed finding. She argued that Daniel's financial affidavits and tax returns were "completely fictitious" and that he was simply attempting to take advantage of the new child support guidelines in section 505 of the Act. In response, Daniel argued that there had been two substantial changes in circumstances: his decreased income *and* Brenda's increased income. Over Brenda's objection, the trial court allowed Daniel to amend his petition to conform with the proofs and add an allegation that Brenda's increased income constituted a substantial change in circumstances. However, the court also posed the question of whether Brenda's income was an appropriate basis for lowering Daniel's child support obligation given that it was not factored into the original calculation in the MSA. The court directed the parties to provide supplemental briefs addressing the issue before it ruled on Brenda's motion for a directed finding.

¶ 11    The parties returned on May 4, 2018, for oral arguments on their supplemental briefs and a ruling on Brenda's motion for a directed finding. The trial court began by finding that Daniel's

---

[1] As explained *infra*, notwithstanding the gross income listed in Daniel's individual 2017 tax return, the trial court ultimately ruled that Daniel's *net* income in 2017 was slightly more than the amount contemplated in the MSA. Daniel has now abandoned his argument that his decreased income constituted a substantial change in circumstances. Thus, for the sake of brevity, we have omitted most of the detailed evidence relating to Daniel's income.

tax returns were "not the most accurate tell of his income" and rejected his argument that they constituted a substantial change in circumstances. Turning to the issue of Brenda's income, the court commented that this was the "harder part of the case" given the recent changes to section 505 of the Act. The court first stated that, under the law in effect when the parties entered the MSA, absent something extraordinary like a "windfall of lottery," the nonsupporting parent's income was not a factor in determining the supporting parent's child support obligation. Next, the court observed that Daniel's child support obligation was based solely on his own income, "[s]o essentially when this was set in 2015, [Brenda's] financial situation really had no impact then, nor does it have any impact now, on [Daniel's] ability to pay child support." The court's final observation was that, although Brenda was unemployed at the time of the judgment of dissolution, there was evidence that she had been employed during the marriage. The court stated, however, that "[t]here was no evidence presented that when child support was set it was ever even contemplated that she was going to remain unemployed the entire time she was receiving support." The court agreed with Brenda that, because her income was not factored into Daniel's child support obligation, "the only logical conclusion is that the basis for modification is the new Act itself."

¶ 12    In closing, the court ruled that Brenda's current income could not be a basis to modify Daniel's child support obligation. The court went on to find that, even if Brenda's current income were considered, "she makes such a small amount compared to [Daniel], that even if that's in there, it's not a substantial change in circumstances." Accordingly, the court granted Brenda's motion for a directed finding and denied Daniel's petition to modify his child support obligation. By that same order, the court scheduled a hearing for the parties' contempt petitions.

¶ 13    On May 31, 2018, Daniel filed a motion for a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).   He argued that, regardless of the outstanding contempt petitions, there was no just reason to delay his appeal from the denial of his petition to modify his child support obligation.  The trial court granted the Rule 304(a) finding on June 4, 2018, and Daniel filed a notice of appeal that same day.

¶ 14                                        II. ANALYSIS

¶ 15    Before addressing the merits of this appeal, we have an independent duty to examine our appellate jurisdiction.  *In re Marriage of Knoerr*, 377 Ill. App. 3d 1042, 1043 (2007).  Daniel incorrectly states in his brief that his notice of appeal on June 4, 2018, was filed within 30 days of the trial court's order on May 4, 2018, and that our jurisdiction therefore lies under Illinois Supreme Court Rule 303(a) (eff. July 1, 2017).  In fact, Daniel filed his notice of appeal 31 days after May 4, 2018, but this error is not fatal.  Pursuant to Rule 304(a), "[i]n computing the time provided in Rule 303 for filing the notice of appeal, the entry of the required [Rule 304(a)] finding shall be treated as the date of the entry of final judgment."  Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).  Therefore, the trial court's Rule 304(a) finding on June 4, 2018, operates as the final judgment for present purposes.  Because Daniel's notice of appeal was also filed on June 4, 2018, we have jurisdiction over this appeal.

¶ 16    On the merits, Daniel does not appeal the trial court's findings with respect to his own income.  He contends only that his petition to modify his child support obligation should have been granted based on Brenda's income from her new employment.  His supporting arguments make much of the recent statutory changes discussed above.  Thus, we begin with a brief overview of those changes as they relate to the facts in this case.

¶ 17    On August 26, 2015, when the trial court entered the judgment of dissolution incorporating the JPA and MSA, section 505 of the Act provided that the court was authorized to "order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for the support of the child, without regard to marital misconduct." 750 ILCS 5/505(a) (West 2014).   Section 505(a)(1) established guidelines determining the "minimum amount of support" for three children to be 32% of the supporting party's net income. *Id.* § 505(a)(1).   As reflected in the MSA, these guidelines formed the basis of the parties' agreement that Daniel would pay Brenda child support in an amount equal to 32% of his net income.

¶ 18    However, the Act was amended by Public Act 99-764 (eff. July 1, 2017) and Public Act 100-15 (eff. July 1, 2017), which changed section 505 to incorporate an "income shares" model. As under the prior version of section 505, courts are now authorized to "order either or both parents owing a duty of support to a child of the marriage or civil union to pay an amount reasonable and necessary for support." Pub. Act 99-764 (eff. July 1, 2017) (amending 750 ILCS 5/505(a)).   But unlike under the prior version of section 505, courts must now "compute the basic child support obligation" by determining the parents' *combined* monthly net income and calculating *each parent's* percentage share of the basic child support obligation.  Pub. Act 100-15 (eff. July 1, 2017) (adding 750 ILCS 5/505(a)(1.5)).

¶ 19    At all times relevant, section 801(c) of the Act has provided that "[t]his Act applies to all proceedings commenced after its effective date for the modification of a judgment or order entered prior to the effective date of this Act."   750 ILCS 5/801(c) (West 2014); 750 ILCS 5/801(c) (West 2016).  Also at all times relevant, section 510(a)(1) of the Act has provided that an order for child support may be modified "upon a showing of a substantial change in

circumstances." 750 ILCS 5/510(a)(1) (West 2014); 750 ILCS 5/510(a)(1) (West 2016). However, Public Act 99-764 notably added the following language to section 510(a):

> "The court may grant a petition for modification that seeks to apply the changes made to subsection (a) of Section 505 by this amendatory Act of the 99th General Assembly to an order entered before the effective date of this amendatory Act of the 99th General Assembly only upon a finding of a substantial change in circumstances that warrants application of the changes. *The enactment of this amendatory Act of the 99th General Assembly itself does not constitute a substantial change in circumstances warranting a modification.*" (Emphasis added.) Pub. Act 99-764 (eff. July 1, 2017) (amending 750 ILCS 5/510(a)).

See also Pub. Act 100-15 (eff. July 1, 2017) (amending 750 ILCS 5/510(a) to change references to "this amendatory Act of the 99th General Assembly" to "Public Act 99-764").

¶ 20 Applying these principles here, we note that Daniel filed his petition to modify child support on November 1, 2017, after Public Act 99-764 became effective. Therefore, if Daniel could establish a substantial change in circumstances since the judgment of dissolution was entered on August 26, 2015, aside from the enactment of Public Act 99-764 itself, then he would be entitled to a modification of his child support obligation. Brenda's income would then be considered in calculating his new obligation under section 505(a). The parties agree that this would result in a significant reduction of Daniel's current child support obligation.

¶ 21 Having provided the necessary context, we now turn to the crux of this appeal. Daniel challenges both of the trial court's rulings. He first argues that, because Brenda was unemployed and earning zero income at the time of the judgment of dissolution, any income she earns from her new job is indeed relevant to establishing a substantial change in circumstances. His second

argument is that, assuming the relevance of Brenda's current employment, her current income is enough to constitute a substantial change in circumstances.

¶ 22    We begin by addressing our standard of review.  A trial court's ruling on a petition for a modification of child support is typically reviewed for an abuse of discretion, meaning that it will not be disturbed unless deemed arbitrary, fanciful, or unreasonable.  *In re Marriage of Fisher*, 2018 IL App (2d) 170384, ¶ 23; *McClure v. Haisha*, 2016 IL App (2d) 150291, ¶ 20.  However, when the issue concerns the legal effect of undisputed facts, we apply the *de novo* standard of review.  *In re Marriage of Hughes*, 322 Ill. App. 3d 815, 818-19 (2001).  Furthermore, the interpretation of a marital settlement agreement is reviewed *de novo* as a question of law.  *Blum v. Koster*, 235 Ill. 2d 21, 33 (2009).

¶ 23    The first issue raised by Daniel is whether Brenda's income is relevant, as a matter of law, to establishing a substantial change in circumstances.  Daniel argues that the trial court erred by focusing its determination on whether Brenda's income was factored into the original calculation of his child support obligation.  Daniel notes that, under the prior version of the Act, section 505(a)(2) allowed for a deviation from the minimum support guidelines based on "the financial resources and needs of the custodial parent."  750 ILCS 5/505(a)(2) (West 2014).  Daniel argues that, because Brenda's income *could* have been factored into his child support obligation when the judgment of dissolution was entered, it is relevant now for establishing a substantial change in circumstances.  Because this issue concerns the legal effect of undisputed facts and the interpretation of the parties' MSA, we apply the *de novo* standard of review.  See *Blum*, 235 Ill. 2d at 33; *Hughes*, 322 Ill. App. 3d at 818-19.

¶ 24    Our resolution of this issue turns not on whether Brenda's income was factored into the original calculation of Daniel's child support obligation but rather on whether the parties

*contemplated* Brenda's future employment when they agreed to the terms of their MSA. We note that a party's increased income does not constitute a substantial change in circumstances when the increase was based on events that were contemplated and expected by the trial court when the judgment of dissolution was entered. *Hughes*, 322 Ill. App. 3d at 819; see also *In re Marriage of Reynard*, 378 Ill. App. 3d 997, 1005 (2008) ("we are reluctant to find a 'substantial change in circumstances' where the trial court contemplated and expected the financial change at issue"). Likewise, when the parties have entered a marital settlement agreement, as is the case here, a substantial change in circumstances will not be found when the parties' present circumstances were contemplated when they entered their agreement. *In re Marriage of Mulry*, 314 Ill. App. 3d 756, 760 (2000).

¶ 25    Here, the trial court observed that Brenda was unemployed when the judgment of dissolution was entered but that she had worked during the marriage. The court reasoned, however, that "[t]here was no evidence presented that when child support was set it was ever even contemplated that [Brenda] was going to remain unemployed the entire time she was receiving support." In other words, the court found nothing to indicate that Daniel's child support obligation was based on the parties' mutual understanding that Brenda would remain unemployed so long as Daniel was paying child support. The logical corollary is that the parties did not intend for Brenda's income from her future employment to trigger a downward modification of Daniel's child support obligation. Our review of the record supports these conclusions.

¶ 26    Under the terms of the MSA, the parties did not factor Brenda's potential income in determining Daniel's child support obligation, nor did they mention Brenda's future employment as an event that would trigger a modification. However, the parties provided for the possibility

of Brenda's future employment when they negotiated their obligations with respect to their children's health insurance. Although Daniel agreed to maintain health insurance for the benefit of the children, the MSA also provided as follows:

> "If for any reason health insurance is not provided through *either party's employer*, then [Daniel] shall secure health insurance for the benefit of the parties' children and the parties shall equally divide the premiums associated therewith. Alternatively, should the parties agree in writing to do so, the parties can secure independent health insurance for the parties' children and divide the costs on a proportionate basis *in relation to the parties' net annual incomes* after taking child support payments into consideration." (Emphases added.)

¶ 27 During oral argument, Daniel's counsel described this as merely a "contingency" provision that should not be considered in determining the parties' intent with respect to child support. Counsel's point is well taken. "A marital settlement agreement is construed in the manner of any other contract, and the court must ascertain the parties' intent from the language of the agreement." *Blum*, 235 Ill. 2d at 33. "The parties' intent must be determined from the instrument as a whole and not from any one clause standing alone; meaning and intent must be given every part." (Internal quotation marks omitted.) *In re Former Marriage of Donnelly*, 2015 IL App (1st) 142619, ¶ 12. Here, if the health insurance provision in the MSA were the only provision that contemplated Brenda's future employment, then we might be inclined to favor counsel's argument.

¶ 28 However, "[a] judgment of dissolution and [marital] settlement agreement are to be construed as a single agreement." *In re Marriage of Frank*, 2015 IL App (3d) 140292, ¶ 11; see also *Reda v. Estate of Reda*, 408 Ill. App. 3d 379, 385 (2011) ("In determining the parties' intent,

we must consider the whole judgment of dissolution of marriage."). Here, the judgment of dissolution incorporated not only the MSA but also the JPA. Furthermore, the MSA expressly states that "[t]he parties have previously entered into a written parenting agreement *** and said joint parenting agreement shall be incorporated into this judgment by reference."

¶ 29 Section 10 of the JPA, titled "Residence & Employment of Parties," provides:

"Each party shall keep each other informed as to the exact place where each of them resides, the phone numbers of their residences, *their places of employment*, *and the phone numbers of their places of employment*. If either party travels out of town for a period of time exceeding 48 hours, then such person shall notify the other of his or her destination and provide a phone number where he or she can be reached." (Emphasis added.)

Section 12(a) of the JPA also contains a "Miscellaneous" provision stating that the parties would "cooperate in scheduling make-up parenting time in the event a party's parenting time gets canceled for reasons *beyond his or her control and other than for work related cancellations*." (Emphasis added.)

¶ 30 Taken together, the health insurance provision of the MSA and the above-referenced provisions of the JPA establish that the parties clearly contemplated Brenda's future employment at the time of the judgment of dissolution. And even assuming, *arguendo*, that the judgment of dissolution were ambiguous in this respect, we would ascertain the parties' intent by "examining the facts and circumstances" surrounding the formation of their agreements. *In re Marriage of Schurtz*, 382 Ill. App. 3d 1123, 1125 (2008). There is no dispute that Brenda worked at two dental offices in the years prior to the judgment of dissolution. The pleadings also reflect that Brenda worked during the marriage as a registered nurse. In March 2014, before the parties

entered an agreed order for temporary support, Daniel sought an order compelling Brenda to seek employment. Daniel alleged that Brenda was "voluntarily unemployed" but "fully capable of gainful employment as she is a licensed registered nurse who worked throughout the parties' marriage." He further alleged that he was "in need of financial support" from Brenda and that Brenda was able to contribute to expenses "including but not limited to child support."

¶ 31    In *Hughes*, the ex-wife filed a petition to modify the ex-husband's child support obligation, based on the ex-husband's increased income due to the termination of his maintenance and car payments. *Hughes*, 322 Ill. App. 3d at 817. The trial court granted the petition and increased the ex-husband's child support obligation, based on these changes in his " 'financial situation.' " *Id.* at 818. We reversed, holding in pertinent part:

> "The increase in [the ex-husband's] available income to pay child support following the termination of maintenance and car payments did not constitute a substantial change in circumstances because these events were contemplated and expected by the court when the judgment for dissolution of marriage was entered." *Id.* at 819.

¶ 32    We acknowledge that *Hughes* was decided under slightly different circumstances. That case did not involve an MSA, and the issue was whether a modification of child support was warranted based on the *supporting* parent's increased income. Moreover, the events contemplated in *Hughes* were virtually certain to occur, whereas the possibility remained in this case that Brenda would never earn any income. We nonetheless hold that the reasoning in *Hughes* is applicable here. It strains credulity to suggest that the parties did not contemplate Brenda's future employment when they entered the JPA and MSA. They expressly agreed to keep each other informed of "their places of employment, and the phone numbers of their places of employment," and they further contemplated Brenda's employment when they negotiated

their "make-up parenting time" and their health insurance obligations. Daniel cannot now rely on the occurrence of an event that he contemplated when he negotiated these other contractual obligations to establish a substantial change in circumstances that would trigger a downward modification of his child support obligation. We therefore hold that the trial court was correct in refusing to consider Brenda's income as a basis for determining whether there was a substantial change in circumstances.

¶ 33 Daniel maintains that his child support obligation under the new section 505 guidelines would be less than half of his obligation based on the prior guidelines. He argues that courts cannot simply ignore this type of disparity in considering whether there has been a substantial change in circumstances. We disagree. Daniel's argument underscores his reliance on the passage of Public Act 99-764 to establish a substantial change in circumstances. However, in proclaiming that "[t]he enactment of this amendatory Act of the 99th General Assembly itself does not constitute a substantial change in circumstances warranting a modification" (Pub. Act 99-764 (eff. July 1, 2017) (amending 750 ILCS 5/510(a))), our General Assembly included a safeguard against maneuvers such as Daniel's. Given the disparity of which Daniel complains, it is predictable that similarly situated individuals with substantial child support obligations will seek to establish any substantial change in circumstances so that they may avail themselves of the new section 505 guidelines. By including the limitation in section 510(a), our General Assembly signaled a policy consideration that courts should remain reluctant to find a substantial change in circumstances based on events that were contemplated and expected when a party's child support obligation was calculated under the prior guidelines. See *Reynard*, 378 Ill. App. 3d at 1005. Here, there is nothing to warrant a modification of Daniel's child support obligation,

because the parties contemplated their present circumstances when they entered the JPA and MSA. See *Mulry*, 314 Ill. App. 3d at 760.

¶ 34    Before we conclude, we note that we would affirm the trial court's ruling even if the parties had not contemplated Brenda's future employment. As noted by Daniel, section 505(a)(2) of the Act previously allowed for a deviation from the minimum support guidelines based on "the financial resources and needs of the custodial parent." 750 ILCS 5/505(a)(2) (West 2014). Here, Daniel's child support obligation was based on his *net* monthly income of $25,312, and Daniel does not contest the trial court's finding that this amount has slightly increased since the judgment of dissolution. By contrast, Brenda is now earning a *gross* monthly income of $3451. However, pursuant to the terms of the JPA, all three of the parties' children continue to reside primarily with Brenda, and Brenda has since given birth to another child from her new marriage. Under these circumstances, we would find no abuse of discretion in the trial court's finding that, even if Brenda's income could be properly considered, it was not enough to warrant a modification of Daniel's child support obligation under section 505(a)(2).

¶ 35                                III. CONCLUSION

¶ 36    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 37    Affirmed.