2023 IL App (2d) 220342-U
No. 2-22-0342
Order filed October 31, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| JEFFREY T. JONES, | ) | of McHenry County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 14-DV-34 |
| | ) | |
| CYNTHIA JONES, n/k/a Cynthia Perkins, | ) | Honorable |
| | ) | Jeffrey L. Hirsch, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Justices Jorgensen and Kennedy concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Minor child's emancipation did not constitute a substantial change in circumstances where it was contemplated in parties' dissolution judgment, and the trial court did not err in calculating petitioner's child support obligations or in setting a retroactive date for the adjustment.

¶ 2     Following the dissolution of his marriage with respondent, Cynthia Jones, n/k/a Cynthia Perkins, petitioner, Jeffrey T. Jones, appeals the August 20, 2021, order of the circuit court of McHenry County adjusting his child support obligations. Specifically, petitioner argues that the circuit court erred in: (1) finding that "the emancipation of the parties' eldest child did not constitute a substantial change in circumstances" warranting "application of the income-shares

model;" (2) "modif[ying] the child support obligation[s] of [petitioner] without using the income shares-model;" (3) modifying "the additional amount of child support [petitioner] would pay over his base income without considering the income *** of [respondent;]" (4) "expand[ing] the definition of additional income over base;" and (5) ordering "that the [retroactive] date of the modification in respect to child support would be May 1, 2021." We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The parties were married on July 12, 1997, in Chicago. During their marriage, the parties had four children: (1) P.J., who was born on November 6, 2001; (2) K.J., who was born on August 21, 2003; (3) C.J., who was born on August 18, 2005; and (4) L.J., who was born on June 24, 2008. On January 14, 2014, petitioner filed a petition for dissolution of marriage. On July 9, 2014, the circuit court entered an agreed order, specifying that the parties had "reached an agreement as to all matters involving custody and visitation and signed a Joint Parenting Agreement," which was incorporated in the order. Among other things, the joint parenting agreement specified that the parties would be awarded joint legal custody of the children, but that respondent "shall be the parent with whom the children primarily reside for purposes of school registration."

¶ 5     On December 31, 2015, following a trial, the circuit court entered its judgment of dissolution of marriage (judgment). Under subsection (D), entitled, "Child Support," the judgment specified:

        "[Petitioner's] current base gross annual income is $135,000[,] and his properly calculated base net [monthly] income is $7623.00. [Petitioner] shall pay [respondent] $3049.00 per month as and for child support, said amount representing 40% of [petitioner's] properly calculated base net monthly income without a deduction for life

insurance payments. Said amount shall be paid in accordance with [petitioner's] rate of pay."

Additionally, in the event that petitioner would "receive additional income over his base gross annual income," the agreement obligated petitioner to pay respondent "27.1% (for so long as there is a duty to support four minor children) of the gross amount of the additional income over base in addition income to the child support payments made by [petitioner]. This percentage shall be adjusted upon the emancipation of each of the parties' children as defined herein." The judgment further provided that child support as to each respective child would be terminated upon the latter of the child's 18th birthday, or upon completion of high school. In no event was child support to continue for any child after their 19th birthday.

¶ 6     Another subsection of the judgment, entitled, "Emancipation," specified that:

"[c]hild support may be terminated earlier upon a child's emancipation under the following circumstances:

   i.   The marriage of a minor child;

  ii.   The death of a minor child;

 iii.   The legal emancipation of a minor child;

  iv.   The minor child having a permanent residence away from the permanent residence of either party ***;

   v.   Entry into the Armed Forces of the United States; or

  vi.   The child engaging in full-time employment ***."

¶ 7     On January 22, 2016, respondent appealed the dissolution judgment, arguing that, among other things, the trial court erred in failing to consider petitioner's unexercised stock options as income for purposes of child support. *Jones v. Jones*, 2016 IL App (2d) 160065-U (*Jones I*). We

affirmed the trial court's rulings, finding that petitioner's argument was forfeited and unripe. *Id.*
¶ 2.

¶ 8    On January 2, 2018, petitioner filed his motion to modify support, arguing that several substantial changes in circumstances warranted a change in his support obligations, including: (1) recent stock sales by petitioner, (2) respondent's increased income, (3) the minor children's changing needs, (4) respondent's employment of a new au pair, (5) increased insurance costs, and (6) petitioner's recent remarriage. On January 31, 2018, respondent responded to the motion to modify support. On April 23, 2018, the parties presented arguments as to petitioner's motion to modify. Following arguments, respondent made an oral motion for a directed finding, which the court granted, having found "no proven substantial change" in circumstances warranting modification.

¶ 9    On March 5, 2020, petitioner filed his petition to reduce child support, which he later amended on March 9, 2020. As specified in the petition, petitioner sought: (1) a reduction in child support as a result of P.J.'s purportedly upcoming, May 21, 2020, emancipation; (2) termination of the aforementioned au pair's services, as provided for in the judgment; (3) an allocation of college expenses between the parties; and (4) an elimination of certain payments intended to cover the children's "extracurricular activities or additional expenses."

¶ 10    On May 11, 2020, respondent responded to petitioner's petition to reduce child support.

¶ 11    On March 11, 2021, petitioner filed his brief in support of his petition to reduce child support. He argued that, as of May 21, 2020, P.J. had become emancipated, constituting a "substantial change in circumstances which was not contemplated in [the j]udgment," which in turn warranted a "modification of [petitioner's] child support obligation." As support for this argument, petitioner pointed out that portions of the judgment—specifically, subsection (D), which

set forth petitioner's child support obligations resulting from additional income over his base salary—allowed for modifications upon a minor child's emancipation. Moreover, petitioner asserted, because the judgment did not specify what effect a minor child's emancipation would have on petitioner's support obligations that stemmed from his base salary, it could be inferred that the parties had not contemplated such an issue, further establishing a substantial change in circumstances.

¶ 12    Petitioner next argued that, even if the trial court were to disagree that P.J.'s emancipation was a substantial change of circumstances warranting a modification in support, "the modification to the base amount of child support should be modified using the calculation set forth by the current guidelines in section 505 of the Illinois Marriage and Dissolution of Marriage Act [(Act) (750 ILCS 5/505 (West 2020))]." Specifically, petitioner reasoned that, because subsection (D) of the judgment did not "lay out a specific amount for the downward modification to that percentage of additional income being paid towards child support," the current version of section 505, which utilized an income-shares model for support, should be used to determine his new support obligations.

¶ 13    On March 31, 2021, respondent filed a brief in opposition to petitioner's petition to modify. In her brief, respondent argued that, at the time the court entered its judgment, the parties "contemplated that the children would emancipate. They anticipated that [petitioner] would pay 32% of net income for child support for three minor children, 28% for two minor children, and 20% for one minor child based upon the then current statutory guidelines." For this reason, respondent disagreed that the emancipation of the children warranted a modification of child support, and instead argued that the court should apply the prior statutory guidelines in effect during the parties' dissolution to "set child support at 32% of [petitioner's] net income." If the trial

court were to disagree with respondent's argument, respondent nonetheless argued that the court should "deviate from the current statutory guidelines upwardly to [o]rder [petitioner] to pay 32% of his net income for child support, or such other sum as the [c]ourt determines to be fair and equitable."

¶ 14 On April 8, 2021, petitioner filed his brief in reply to respondent's oppositional brief, disputing that the parties had contemplated the support plan outlined by respondent in her brief. Petitioner also generally argued against any potential deviation from the statutory guidelines, as previously proposed by respondent.

¶ 15 On July 1, 2021, while his earlier petition was still pending, petitioner filed another petition to modify child support specifically to "request modification based on the change in circumstances being the income of both parties since February 7, 2021[,] and not to amend the March 9, 2020 [p]etition in any way."

¶ 16 On July 2, 2021, during a hearing on an unrelated contempt petition, the trial court admonished petitioner that, because his earlier, amended petition to modify remained pending, his later, July 1, 2021, petition was filed without leave of court. Petitioner consequently withdrew the July 1, 2021, petition.

¶ 17 On August 18, 2021, the court held a hearing on petitioner's March 9, 2020, petition to modify. Petitioner appeared through counsel but did not personally appear. At the onset of the hearing, the parties informed the court that they had reached a tentative agreement as to "a number of issues," aside from "the modification of child support subsequent to July of 2020."

¶ 18 The parties presented the court with their agreement, which contained the following pertinent stipulations: (1) that the parties' eldest child, P.J., became emancipated on May 21, 2020," meaning three "minor children remain;" (2) that petitioner would pay respondent $480 each

month "for child-related expenses including school expenses *** and extra-curricular expenses," with this amount being reduced as each additional child becomes emancipated; (3) that petitioner would continue contributing towards an au pair's pay until the youngest child reached the age of 16; (4) that petitioner "shall not receive any retroactive modification to child support prior to the filing of his Financial Affidavit on July 20, 2020;" and (5) that "[a]ll terms and provisions contained in the Judgment *** and previous Orders not in conflict herein shall remain in full force and effect." Additionally, per the agreement, petitioner would withdraw his claims concerning a "determination of college expenses."

¶ 19    After the court approved the agreement, petitioner's counsel informed the court that "the only issue that remains is the calculation of the child support based on emancipation," as "[e]verything else [was] resolved by the agreed order." Proceeding on the petition to modify, counsel informed the court that there was "nothing further that the petitioner needs to present in order to proceed." Respondent disagreed, noting that McHenry County Cir. Ct. R. 3.11(b), "which relates to failure to proceed[,] states that failure of a party to be ready when the case is reached for trial will subject the *** cause to dismissal." Furthermore, respondent advised, "[McHenry County Cir. Ct. R. 11.02(b) (eff. Sept. 19, 2016)] specifically says that no affidavit dated more than 60 days before the scheduled hearing shall be considered valid." With this in mind, respondent argued that petitioner's most recent financial affidavit was filed on May 12, 2021, making it "more than 60 days old." Furthermore, because petitioner was not present at the hearing, respondent argued that he could not attest that "the representations in that affidavit are current." For all of these reasons, respondent asserted that petitioner "failed in presenting sufficient information to [the] [c]ourt as required by *** local rules," and orally moved the court to deny the petition for modification. The court denied the oral motion.

¶ 20    After petitioner rested his case, respondent was called to testify. Respondent testified that, pursuant to the judgment, petitioner was "ordered to pay [her] $3,049 per month for child support" as his "base obligation," and that he was also "obligated to pay 27.1 percent of any income above his base." Respondent agreed that, pursuant to the judgment, this "percentage shall be adjusted upon the emancipation of each of the parties' children." Respondent understood that "[t]he only time" in which "child support would be modified is when one of [the] kids graduated high school, and then, *** it was going to go down by a certain percentage." Respondent believed that petitioner's current support obligations were necessary to help maintain the children's standard of living, and that, if support were recalculated pursuant to an income-shares model, the children would "experience a reduction in their standard of living." Therefore, if the court were to modify petitioner's support obligations, respondent thought it would be appropriate to "apply the previous child support guidelines." Otherwise, respondent agreed that an upward deviation would be appropriate.

¶ 21    Following respondent's testimony, respondent rested her case and the parties proceeded with closing arguments. Petitioner's counsel argued that the court should adopt the income-shares model in modifying support, as P.J.'s emancipation "constitute[d] a substantial change in circumstances" and it was "outlined in the judgment that child support for that child would terminate upon emancipation."

¶ 22    During her closing arguments, respondent emphasized that it was petitioner's burden to prove a substantial change of circumstances had occurred in order to be entitled to modification. To that point, respondent argued that petitioner was not present in court to testify as to any such change, and he also did not provide the court with an updated financial affidavit to support any modification—retroactive or otherwise. Furthermore, respondent once again specified that, if the

court were to find a substantial change in circumstances "to warrant application of the new [A]ct," respondent would request "an upward deviation."

¶ 23    On August 20, 2021, the court issued its decision as to the pending petition to modify. As summarized by the court, any modifications utilizing the newer income-shares model must first be predicated by a substantial change of circumstances warranting such an adjustment. However, the court found that petitioner "failed to prove by a preponderance of the evidence [that] there has been a substantial change in circumstances that would warrant application of the income-shares guidelines."

¶ 24    For example, while a "parent's financial position" and "financial resources" should be considered in determining whether a substantial change in circumstances had occurred, the court found that petitioner "failed to prove he's suffered any reduction in his ability to pay support. Quite the opposite, [petitioner's] base salary increased from $135,000 to $164,648 gross annually." On top of that, petitioner continued to make considerable "additional income in the form of bonuses, commissions, stocks, stock options, 401(k) employer match, employer-sponsored vacations[,] and other perks," with his latest financial affidavit indicating that "his total gross income for 2020 was $315,630, and that his current monthly gross income [was] $17,759 per month. [Petitioner's] prior affidavits *** showed similar figures." The court further reasoned that these increases were "expressly contemplated by the additional percentage provision of the judgment," further precluding a finding of a substantial change in circumstances.

¶ 25    Furthermore, the court found that petitioner "did not allege a substantial change in [respondent's] financial circumstances as a basis to modify child support." However, even if he had, the court noted that respondent "presented evidence about her income and financial resources and she filed an updated financial affidavit." Based on this evidence, the court found "her income

and financial resources [did] not constitute a substantial change in circumstances to warrant a modification of support let alone application of income-shares guidelines."

¶ 26    Finally, while petitioner's petition had seemingly been primarily based on P.J.'s emancipation, the court found that "the child's maturation was not only expected and contemplated by the judgment,[ ] but standing by itself it [was] not a substantial change in circumstances that warrant[ed] application of the income-shares guidelines."

¶ 27    Nonetheless, because "there [was] now *** only a support obligation for three minor children" under the judgment, the court adjusted petitioner's base support obligations to $2,440 per month, "which represent[ed] 32% of his net income *** at the time of judgment." Noting that certain portions of petitioner's income remained "uncertain as to source, time of payment, and amount," the court adhered to the judgment and adjusted petitioner's support obligations stemming from any additional income over his base salary to "22% of any gross income he receives in excess of $11,250 gross per month from any source, including but not limited to, bonuses, commissions, vested stocks and stock options, salary increases, 401(k) employer match, employer-sponsored vacations and other perks, rents, investment income ***, capital gains derived from the sale, exchange or transfer of any stock, stock option, or other security, and all other sources of income subject to support under Illinois law."

¶ 28    In determining whether these changes should be applied retroactively, the court stated that "[t]he effective date of modification is discretionary." After analyzing a variety of factors, the court concluded that its ordered modifications "shall be effective as of May 1, 2021."

¶ 29    Petitioner timely appealed.

¶ 30                                  II. ANALYSIS

¶ 31   On appeal, petitioner argues that the trial court erred in finding that P.J.'s emancipation "did not constitute a substantial change in circumstances warranting the application of the income-shares model" and in calculating petitioner's new support obligations. We analyze these arguments in turn.

¶ 32   We will not disturb a trial court's ruling on a petition for the modification of a child support order unless it is shown that the ruling constituted an abuse of discretion. *In re Marriage of Salvatore*, 2019 IL App (2d) 180425, ¶ 22. In order to show an abuse of discretion, one must establish that the court's ruling was arbitrary, fanciful, or otherwise unreasonable. *Id.* "However, when the issue concerns the legal effect of undisputed facts, we apply the *de novo* standard of review. [Citation.] Furthermore, the interpretation of a marital settlement agreement is reviewed *de novo* as a question of law." *Id.* Here, as petitioner's arguments all involve interpretation of the judgment, we apply the *de novo* standard of review. *Id.*

¶ 33                    A. Effects of Emancipation

¶ 34   First, we disagree with petitioner's arguments that the trial court erred in failing to consider P.J.'s emancipation as a substantial change of circumstances that would otherwise warrant the application of an income-shares model of support. Pursuant to the version of the Act that was in effect at the time the parties separated, Illinois courts were authorized to "order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for the support of the child, without regard to marital misconduct." 750 ILCS 5/505(a) (West 2014). This earlier version of the Act included guidelines for courts to set minimum amounts of support. *Id.* Under these guidelines, a party paying support for four children would, at a minimum, be required to pay 40% of their net income towards support. *Id.* A supporting party with three children would need to pay 32% of their net income towards support. *Id.*

¶ 35 However, after the passage of Public Act 99-764 (eff. July 1, 2017) and Public Act 100-15 (eff. July 1, 2017), section 505 of the Act was amended to incorporate an "income-shares" model. *Salvatore*, 2019 IL App (2d) 180425, ¶ 18. Under this model, courts were now authorized to calculate child support obligations using both parents' combined incomes to determine each parent's percentage share of support obligations. *Id.* Furthermore, section 801(c) of the Act (currently and at all relevant times) specifies that the amendments apply "to all proceedings commenced after its effective date for the modification of a judgment or order entered prior to the effective date of this Act." 750 ILCS 5/801(c) (West 2020)).

¶ 36 At all relevant times, the Act has further provided that, in order to modify "the provisions of any judgment respecting maintenance or support," one must make a "showing of a substantial change in circumstances." 750 ILCS 5/510(a)(1) (West 2020). Later, in July 2017, Public Act 99-764 amended section 510(a) to read:

> "The court may grant a petition for modification that seeks to apply the changes made to subsection (a) of Section 505 by this amendatory Act of the 99th General Assembly to an order entered before the effective date of this amendatory Act of the 99th General Assembly only upon a finding of a substantial change in circumstances that warrants application of the changes." Pub. Act 99-764 (eff. July 1, 2017) (amending 750 ILCS 5/510(a)).

Thus, in order to use the newer, income-shares model to modify a court order setting support obligations created under the prior version of the Act, the party seeking modification must successfully establish a substantial change in circumstances. *Id.*; *Salvatore*, 2019 IL App (2d) 180425, ¶¶ 19-20.

¶ 37    "In order to establish a substantial change in circumstances, the petitioning party must show an increased ability of the supporting spouse to pay and an increase in the needs of the children since the previous order." *In re Marriage of Hughes*, 322 Ill. App. 3d 815, 819 (2001). However, if a certain event was contemplated and provided for in the parties' judgment for dissolution of marriage, that event cannot be deemed to be a substantial change in circumstances. *Id.*

¶ 38    Here, in arguing that P.J.'s emancipation constituted a substantial change in circumstances, petitioner argues:

> "The parties in this matter stipulated that the oldest child of the parties, P.J., reached the age of eighteen on November 6, 2019[,] and graduated high school on May 21, 2020. [Citation.] Due to these facts, [petitioner's] child support obligation changed from providing for four minor children to three minor children. [Citation.] This change in the number of children provided for under [petitioner's] child support obligation warranted a modification of the support payment set forth in the Judgment of Dissolution of Marriage. [Citation.] Because this change warranted modification of the child support obligation set forth in the Judgment of Dissolution of Marriage, the new child support obligations falls [*sic*] under 750 ILCS 5/505(a)(1), which sets forth the current guidelines for child support."

¶ 39    Essentially, petitioner argues that, because the judgment specified that certain changes to petitioner's support obligations would be made upon each child's emancipation, P.J.'s emancipation constituted a substantial change in circumstances, warranting application of the income-shares model.

¶ 40    However, this paradoxical argument plainly misses the mark. Again, an event cannot be deemed a substantial change in circumstances when it was contemplated by the parties and the court at the time a judgment of dissolution was entered. Here—as acknowledged by petitioner both in his briefs and in the relevant trial court hearings—the topic of the children's emancipation was thoroughly covered by the judgment. For example, the judgment specified that child support for each child would cease once each child completed high school, or upon their 18th birthday, whichever occurs later. Also, in providing petitioner's support obligations stemming from his additional income, the judgment provides that petitioner shall pay 27.1% of "the gross amount of the additional income over base in addition[al] income to the child support payments," with this percentage being "adjusted upon the emancipation of each of the parties' children as defined herein." Accordingly, the judgment provided that support for each child would cease upon their emancipation and that the total level of support would be adjusted upon each child's emancipation. However, the judgment makes no mention of the parties' purported intent that any child's emancipation would, in and of itself, cause a substantial change in circumstances, which in turn would allow for modification under the income-shares model. Because the parties omitted any language classifying emancipation as a substantial change of circumstances, despite having directly contemplated and memorialized other consequences stemming from the children's emancipations, it can be inferred that the parties did not intend such a conclusion to follow. *In re Marriage of Sweders*, 296 Ill. App. 3d 919, 922 (1998) ("A strong presumption exists against provisions that could easily have been included in the agreement but were not").

¶ 41    Nonetheless, petitioner argues that P.J.'s emancipation was not "contemplated in relation to the reduction of child support in the Judgment," as the original judgment did not provide a specific percentage by which petitioner's child support obligations—both as to his base salary and

additional income—would be adjusted in light of each child's emancipation. Petitioner further argues that the court essentially acknowledged that a substantial change in circumstances had indeed occurred, as it *did* modify petitioner's support obligations.

¶ 42    We find this top-down reasoning to be unavailing. At its core, petitioner's argument confuses a modification of a support order—as described in section 510 of the Act—with a *monetary* adjustment that was expressly provided for in the original dissolution judgment. Otherwise put, while petitioner is correct that the court *did* adjust petitioner's support obligations, he overlooks the fact that the court did so according to the framework of the original judgment, which explicitly provided for the adjustment. In this sense, the court did not modify the actual judgment due to a substantial change in circumstances as described in section 510 of the Act; it instead adhered to the judgment's original language concerning the effects of emancipation, adjusting petitioner's obligations as required by the judgment. Furthermore, even if an exact percentage of any requisite adjustments was not provided for in the judgment, it remains clear that P.J.'s emancipation—the event we are concerned with—*was* contemplated. To that point, per our *de novo* review, pertinent case law is clear that the P.J.'s emancipation did not constitute a substantial change in circumstances. *Salvatore*, 2019 IL App (2d) 180425, ¶ 22; *Hughes*, 322 Ill. App. 3d at 819.

¶ 43                              B. Adjustment Calculation

¶ 44    Next, petitioner argues that the court erred in calculating the adjustments made to his child support obligations. Specifically, petitioner argues that the trial court erred in calculating the adjustment by (1) failing to apply the income-shares model to petitioner's new obligations and failing to consider respondent's income in adjusting the support, (2) adjusting the percentage of support he would pay as a result of any additional income over his base salary, and (3) setting a

date for the retroactive adjustment to petitioner's support obligations. We address these arguments in turn.

¶ 45                              1. Income-Shares Model and Respondent's Income

¶ 46     Because petitioner had failed to establish any substantial changes in circumstances, we disagree with his arguments that the trial court failed to implement the income-shares model and consider respondent's income when adjusting his support obligations. Once more, pursuant to section 510(a) of the Act, a court "may grant a petition for modification that seeks to apply the changes made to subsection (a) of Section 505 by Public Act 99-764 to an order entered before the effective date of Public Act 99-764 only upon a finding of a substantial change in circumstances that warrants application of the changes."

¶ 47     Here, petitioner argues that the trial court's August 20, 2021, order adjusting petitioner's obligation was arbitrary, as there was "no legal basis cited" to support petitioner's new obligations. Petitioner further argues that his new support obligations deviate "from the current guidelines for setting a child support obligation," despite the fact that, in its August 20, 2021, order, the trial court rejected respondent's call for a statutory deviation. Petitioner contends that the court's order offended the "legislative intent regarding modification of child support orders," as section 801(c) of the Act specifies that it "applies to all proceedings commenced after its effective date for the modification of a judgment or order entered prior to the effective date of th[e] Act." 750 ILCS 5/801(c) (West 2020). According to petitioner, "[h]ad the legislature intended for modification of child support orders to use the former percentage of net-income model, the legislature would not have included a provision in the current Act which details the effectiveness of the Act on such modifications." Because petitioner filed a petition to modify after the effective date of Public Act 99-764 and "establish[ed] a substantial change in circumstances related to the emancipation of one

of his children," petitioner argues that the court "should have utilized the income-share model to determine [petitioner's] child support obligation in accordance with the [income-share] guidelines."

¶ 48    Petitioner's arguments rest upon several flawed premises. First, with regards to petitioner's argument that the trial court's August 20, 2021, order contradicted itself by rejecting respondent's request for a statutory deviation while in fact deviating from current statutory guidelines, it is abundantly clear from the record that respondent only requested a deviation in the event the court found a substantial change in circumstances warranting application of the income-shares model. Respondent testified as much during the hearing on the petition to modify and reiterated this contention during her closing arguments. However, the court found no substantial change in circumstances had occurred, and, as petitioner acknowledges, the court's support adjustments fell squarely within the guidelines of section 505 as they existed when the parties' judgment was first entered. Accordingly, there was no deviation from the appropriate guidelines.

¶ 49    Second, petitioner's arguments concerning the legislative intent behind the Act fail because, as we have thoroughly explained above, no substantial change of circumstances occurred. Once more, section 510 of the Act provides that the income-shares model should not be applied to modify a judgment preceding the relevant amendments unless there has been a substantial change in circumstances warranting such a change. 750 ILCS 5/510(a) (West 2020). Here, as P.J.'s emancipation did not cause a substantial change in circumstances, the trial court's order is consistent with the Act, despite petitioner's repeated arguments that "[t]here is no such provision for the use of prior statutory guidelines for calculating child support under Illinois law." To the contrary, we find section 510(a) to be unmistakable in providing that, unless a substantial change

in circumstances occurs, the version of the Act that was in effect when a party's dissolution judgment was entered dictates which version of the Act the court should follow. *Id.*

¶ 50    This lack of any substantial change in circumstances also forecloses petitioner's argument that the trial court failed to take respondent's income into account when adjusting his support obligations. Again, before the passages of Public Act 99-764 (eff. July 1, 2017) and Public Act 100-15 (eff. July 1, 2017), section 505(a) only required courts to consider a "supporting party's net income" in calculating support, unless a deviation was warranted. 750 ILCS 5/505(a)(1) (West 2014). Because the parties' judgment was entered during the pendency of this prior version of the Act, and because no substantial change in circumstances warranting application of the newer version of the Act had occurred, the court was not obligated to consider respondent's income while calculating petitioner's adjusted support obligations.

¶ 51                               2. Additional Income Over Base

¶ 52    Next, we disagree with petitioner's arguments that the trial court erred in "expanding the definition of additional income over base" as initially set forth in the parties' judgment. According to petitioner, the initial judgment only specified that he must pay 27.1% of any gross additional income resulting from "bonuses, commissions, and salary increases" towards child support. Pointing to language in the court's decision that accompanied the judgment, which specified that the "[c]ourt decline[d] to predict the future and order any payments resulting from future income derived from some other source," petitioner argues that this list of additional income is exhaustive. Petitioner postulates that the trial court therefore erred in expanding the judgment's definition of "additional income" to further include income derived from:

> "vested stocks and stock options, *** 401(k) employer match, employer sponsored
> vacations and other perks, rents, investment income (e.g. dividends and interest), capital

gains derived from the sale, exchange[,] or transfer of any stock, stock option, or other security, and all other sources of income subject to support under Illinois law."

Curiously, despite having exhaustively argued that P.J.'s emancipation constituted a substantial change in circumstances warranting application of the income-shares model, petitioner now claims that "[n]o change has occurred in the manner in which [petitioner] receives his additional income over his base salary, and thus there has not been a change in circumstances which would warrant changing the definition of what constitutes said additional income."

¶ 53    We disagree. Turning to the parties' judgment, the pertinent section concerning petitioner's child support obligations resulting from additional income specifies:

> "In addition to the base amount of child support as set forth herein, the parties acknowledge that [petitioner] may receive additional income above his base gross annual income, *including bonuses, commissions, and salary increases, which additional income is subject to and shall be included in [petitioner's] child support obligation."* (Emphasis added.)

The judgment then goes on to describe the percentages of any such additional income that petitioner would need to pay towards child support.

¶ 54    We see no language from this portion of the judgment indicating that the definition of "additional income" was solely limited to "bonuses, commissions, and salary increases." Petitioner has not identified any language in the judgment supporting his interpretation either. Accordingly, we presume that the court did not intend to limit the definition of "additional income" thusly. *Sweders*, 296 Ill. App. 3d at 922.

¶ 55    We find further support for this conclusion when reviewing *Jones I*. There, respondent argued that petitioner's "stock options should [have been] factored into his child support obligation

when such options vest[ed], not when they are exercised." *Jones*, 2016 IL App (2d) 160065-U, ¶ 11. Although we ultimately found the issue to be forfeited as to these stock options that had not yet been exercised, we noted that, "pursuant to the judgment of dissolution, [petitioner] must pay [respondent] 27.1% of any income that he receives in excess of his base salary. It appears that [petitioner] concedes that income derived from the sale of stock falls within this 27.1% obligation." *Id.*, ¶ 13. Turning to petitioner's brief from *Jones I*, petitioner himself conceded that, "in the event he sells his shares and they are converted into an actual cash distribution, he may then have to pay child support on those funds." Otherwise put, petitioner has already admitted that the judgment's language as to additional income is not exhaustive, and that any income realized from sold stocks may be considered as additional income once they are exercised.

¶ 56 Additionally, it is true that, in its decision accompanying the order, the court "decline[d] to predict the future and order any payments resulting from future income derived from some other source." However, as we found in *Jones I*, this language was included in order to address respondent's arguments that petitioner's vested stock options *that had not yet been exercised* should have been considered when calculating petitioner's support obligations. Indeed, the court's wary language concerns only "future income," not current income in the form of stock options that have already been exercised and converted to cash. For all of these reasons, we reject petitioner's arguments that the judgment contained any limiting language as to what constitutes "additional income." Accordingly, the trial court's adjustment of support did not extend the original judgment's definition of additional income.

¶ 57 Petitioner also argues that, because the original judgment contained language awarding certain incentive stock options (ISO stocks) to petitioner, he should not "now have to pay child support on the capital gains from the purchase price of [those] ISO stocks." However, petitioner

gives us little reasoning and no authority as to why he should not have to pay support resulting from any additional income gained from exercising these stock options. Instead, petitioner provides us with the conclusory argument that "[t]he aforementioned stocks *** were marital assets assigned to [petitioner] in the Judgment of Dissolution of Marriage, and were excluded from being included as income for the purposes of [petitioner's] child support obligation." Petitioner does not adequately explain what language in the judgment supports this interpretation. For all of these reasons, petitioner's argument is forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *Alms v. Peoria County Election Commission*, 2022 IL App (4th) 220976, ¶ 28 ("Where an appellant fails to present a cogent argument, that argument is forfeited").

¶ 58　Petitioner also argues that the trial court's support calculations were violative of its own prior court order. As petitioner points out, on January 25, 2018, respondent filed her amended petition for rule to show cause, partly arguing that petitioner had failed to pay additional child support resulting from his receipt of "significant income from the vesting of stock options, employee stock plans, and/or the sale of stock." On February 13, 2018, petitioner moved to dismiss the petition for rule pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code). 735 ILCS 5.2-619(a)(9) (West 2018). In his motion, petitioner argued that respondent's claims were "defeated by the fact that no order exists requiring [petitioner] to pay child support on any aspect of stocks or other form of compensation not enumerated in the Judgment." On March 12, 2018, the court granted the motion to dismiss as to respondent's stock-related claims. However, the resulting order includes no mention of the court's reasoning, and the record does not contain any transcripts from the hearing producing the order.

¶ 59　We note that there are a myriad of potential reasons as to why the trial court may have denied respondent's petition for rule to show cause. Because petitioner has failed to include any

transcripts from the pertinent hearing within the record, however, we are unable to ascertain the court's reasoning in denying respondent's petition for rule to show cause. Accordingly, we are unable to accurately discern whether the court truly believed—as petitioner argues—that respondent's arguments concerning the stocks were meritless; all we know for certain is that the trial court did not find it appropriate to hold petitioner in contempt for failing to make additional support payments resulting from the stock income. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984) ("Any doubts which may arise from the incompleteness of the record will be resolved against the appellant"). For all of these reasons, the court did not err in calculating petitioner's support obligations.

¶ 60                                    3. Date of Modification

¶ 61      Finally, we disagree with petitioner's argument that the trial court erred in ordering that the adjustments to petitioner's support obligations should retroactively begin on May 1, 2021, "as opposed to the date of the emancipation of the eldest child, May 21, 2020." "An agreed order, also termed a consent order or a consent decree [citation], is not an adjudication of the parties' rights but, rather, a record of their private, contractual agreement [citation]. Once such an order has been entered, it is generally binding on the parties and cannot be amended or varied without the consent of each party." *In re Marriage of Rolseth*, 389 Ill. App. 3d 969, 971 (2009).

¶ 62      Here, petitioner essentially argues that, since P.J. became emancipated on May 21, 2020, any changes as to petitioner's support obligations should have begun on that date. Such an argument may have held water if it were not for the parties' August 18, 2021, agreed order, which explicitly provided that "[petitioner] shall not receive any retroactive modification to child support prior to the filing of his Financial Affidavit on July 20, 2020." Accordingly, this language was

binding on the parties, and we find no error by the trial court for honoring the terms of the parties' agreement.

¶ 63    Nonetheless, petitioner argues that the trial court lacked any legal basis to retroactively adjust petitioner's support from May 1, 2021. Specifically, petitioner argues:

> "The Trial Court cite[d] to 750 ILCS 5/510(a) [in its order,] stating that the provisions of any judgment respecting support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification. [Citation.] The Trial Court does not cite any law which gives it the authority to require that [petitioner] pay child support for a child who has emancipated. As such, [petitioner's] child support obligation should be modified back to the date of emancipation."

This argument is particularly meritless. Petitioner has provided us with no case law or authority whatsoever establishing how the trial court's supposed omission of a citation has any impact on its findings, nor does petitioner even attempt to explain why such a failure to cite should result in reversal. Accordingly, the argument is forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 64    Petitioner also argues that the parties' August 18, 2021, agreed order explicitly represented the parties' agreement that "they would use the date of July 20, 2020, the date that [petitioner] filed his Financial Affidavit, as the date for the calculation of retroactive support." Ignoring the fact that this specific argument contradicts petitioner's overarching contention that May 21, 2020, was the appropriate date to set retroactive support, petitioner's claim here is downright misleading. Pursuant to the August 18, 2021, agreed order, the parties only agreed that "[petitioner] shall not receive any retroactive modification to child support prior to the filing of his Financial Affidavit on July 20, 2020." The order contained no language indicating that the parties agreed to set retroactive order to this date, and, in fact, respondent had argued thereafter that petitioner was not

entitled to any retroactive modifications in support whatsoever. Accordingly, no language in the order supports petitioner's argument. To this point, we remind petitioner's counsel that, as an officer of the court, she "owe[s] a duty to the court to be honest and forthright in all dealings with the court." *Semmens v. Semmens*, 77 Ill. App. 3d 936, 940 (1979). For all of these reasons, we reject petitioner's argument that the trial court erred in setting the retroactive date for its support adjustments.

¶ 65                                    III. CONCLUSION

¶ 66    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 67    Affirmed.